888 A.2d 710

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Khatib COUSIN, Appellant.**

Supreme Court of Pennsylvania.

Submitted Aug. 8, 2005.

Decided Dec. 28, 2005.

Joseph Raymond Viola, Philadelphia, PA, for Khatib Cousin.

Hugh J. Burns, Philadelphia, PA, for Com.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice SAYLOR.

This is an appeal by allowance from the denial of post-conviction relief from a judgment of sentence for voluntary manslaughter and related offenses. The dispositive question is whether prejudice should be presumed in the evaluation of a defense attorney's stewardship in undertaking a strategy of conceding his client's guilt of voluntary manslaughter in order to gain credibility in the eyes of the fact-finder and avoid a conviction of a higher degree of criminal homicide.

The underlying facts are uncontested. On the evening of August 9, 1998, Appellant Khatib Cousin approached Pedro Torres on Jasper Street in Philadelphia to inquire as to an incident the prior night and the whereabouts of George Dascenzo. Torres directed Appellant to the home of Dascenzo's uncle, Charles Ertell. Some time after Appellant entered the home, he and Dascenzo left the house together, while Ertell followed. A verbal argument ensued and turned physical when Dascenzo swung at Appellant, but failed to hit him. Appellant struck back and Dascenzo fell to the ground. Appellant then repeatedly punched and kicked Dascenzo in the head, neck, and chest as he lay on the ground. Ertell and Torres intervened and pushed Appellant away. Appellant then walked away from the fight scene to the steps of a nearby house and retrieved a handgun from inside of a folded baseball cap. Loading the gun, he walked back to the scene

and fired several shots in the direction of Dascenzo, Ertell, and Torres, killing Dascenzo and wounding Ertell. Appellant then waved the gun at the crowd on the street and stated, "Who wants it?," before leaving the area a few moments later. The police eventually found Appellant hiding under the porch of a nearby house, with the weapon a short distance away.

Appellant was charged with murder, aggravated assault, and related offenses. *See* 18 Pa.C.S. §§ 2502, 2702. After privately retaining Attorney Louis T. Savino, Jr., to represent him, Appellant pleaded not guilty to all charges and waived his right to a jury trial. Thereafter, he was tried before the Honorable Renee C. Hughes in Philadelphia common pleas court. During the May 1999 bench trial, Appellant did not testify in his defense; instead, he offered character witnesses, and the prosecution stipulated that those individuals would testify that Appellant had a reputation in the community as a peaceful and law-abiding citizen. During his closing argument, Attorney Savino conceded Petitioner's guilt as to criminal homicide, but argued that he was not guilty of murder. He stated, "Your Honor, if it please the Court, I won't stand here and tell you that [Appellant] after this trial should be acquitted of all charges. I don't suggest that that's an appropriate verdict given the circumstances of this case." N.T. May 27, 1999, at 105. Thereafter, counsel highlighted the evidence tending to show that the homicide occurred in the heat of the emotions stemming from the physical confrontation, and argued that malice was absent. Counsel closed his argument by stating, "I suggest that this is a case of voluntary manslaughter for the reasons that I have enunciated and it fits so clearly within that scope that I submit that that's an appropriate verdict." *Id.* at 146.

The following day, the trial court ruled from the bench, indicating that "[i]t has always been clear that there would be a verdict of guilty in this case. The question was guilty as to what." N.T. May 28, 1999 at 5. After summarizing the evidence, the court made a specific finding that Appellant did not act with malice and, therefore, that he was guilty of voluntary manslaughter rather than murder. *Id.* at 6. The

court additionally convicted Appellant of aggravated assault, violation of the Uniform Firearms Act, *see* 18 Pa.C.S. § 6101, and possession of an instrument of crime, *see* 18 Pa.C.S. § 907, and imposed a sentence in the aggravated range for voluntary manslaughter of ten-to-twenty years' incarceration, as well as a consecutive sentence of five-to-ten years' incarceration for aggravated assault, for an aggregate prison term of fifteen-to-thirty years.[1]

On direct appeal, appointed counsel raised issues relating to Appellant's sentence. She did not, however, assert any claim pertaining to Attorney Savino's decision to concede Appellant's guilt of voluntary manslaughter during the closing argument at trial. The Superior Court affirmed Appellant's judgment of sentence, and this Court denied allocatur. *See Commonwealth v. Cousin,* 570 Pa. 682, 808 A.2d 569 (2001).

Thereafter, represented by new counsel retained by his family, Appellant filed a petition pursuant to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546 (the "PCRA"). In the petition, Appellant claimed that trial counsel's concession of guilt during closing arguments amounted to an open guilty plea to all charges without Appellant's consent and, as such, deprived Appellant of his constitutional rights to due process and effective assistance of counsel.[2] Appellant asserted, in this regard, that counsel's actions introduced a structural defect into the proceedings, and that such actions should therefore be deemed *per se* prejudicial. In order to overcome the waiver of this claim by virtue of his failure to raise it on direct appeal, Appellant layered his ineffectiveness claim via an assertion that his direct appellate counsel provided deficient stewardship due to such failure. *See generally Commonwealth v. Grant,* 572 Pa. 48, 59–60, 813 A.2d 726, 733

---

1. No additional sentence was imposed as to the other offenses.

2. Claims of constitutionally deficient stewardship on the part of counsel are assessed according to the well-established criteria of arguable merit, absence of reasonable strategy, and prejudice. *See Commonwealth v. Pierce,* 515 Pa. 153, 158–60, 527 A.2d 973, 975–76 (1987). As noted, our present focus is on the prejudice requirement.

(2002) (discussing layering relative to the requirement of issue preservation).[3]

The PCRA court, per Judge Hughes, dismissed the petition without a hearing.[4] In its Rule 1925(a) opinion, *see* Pa.R.A.P. 1925(a), the court acknowledged that Appellant relied heavily upon *United States v. Holman,* 314 F.3d 837 (7th Cir.2002), but indicated that such reliance was misplaced, as *Holman* involved a concession of guilt during the opening statement rather than in a closing argument. The PCRA court ultimately concluded that counsel's concession of guilt in his closing statement was qualitatively different from an open guilty plea or a concession at the beginning of trial, because counsel's closing argument did not entail a waiver of Appellant's procedural safeguards which remained in effect throughout the trial. On that basis, the PCRA court held that Appellant's underlying issue lacked arguable merit and, accordingly, that he was not entitled to relief on his ineffectiveness claim.

The Superior Court disposed of the appeal in a memorandum opinion dated May 24, 2004. Initially, the court expressed its discomfort with applying a prejudice requirement in this situation because it perceived counsel's actions to be "inconsistent with the mainstays of our criminal justice system," primarily, the defendant's presumption of innocence and the Commonwealth's burden to prove guilt beyond a reasonable doubt. As an intermediate appellate court, however, the Superior Court deemed itself without authority to "alter established rules of procedure adopted by the Pennsylvania Su-

---

**3.** Although *Grant* abrogated the rule of *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687 (1977), which treated claims of ineffective assistance of trial counsel as waived where they were not raised on direct appeal, such holding was not made retroactive to cases, such as this one, in which the direct review was concluded prior to *Grant's* issuance. *See Grant,* 572 Pa. at 68–69, 813 A.2d at 739. Therefore, *Hubbard* applies here, and Appellant's underlying claim of trial counsel's ineffectiveness is waived.

**4.** Appellant does not take issue with the court's decision to dispose of his petition without conducting an evidentiary hearing. Indeed, Appellant expressly disclaimed the need for such a proceeding to prove his record-based claim unless and until the Commonwealth argued that trial counsel's actions were reasonably designed to effectuate his interests. *See* PCRA Petition at 9.

preme Court" by instituting a *per se* ineffectiveness standard in this context. Superior Court Op. at 5–6. The court ultimately affirmed the denial of post-conviction relief on the basis that Appellant failed to demonstrate that counsel's actions resulted in actual prejudice. The court observed, in this regard, that it was undisputed that Appellant retrieved the gun, walked back to the scene of the fight, and intentionally shot the unarmed victims. Further, Appellant never proffered a self-defense argument at trial or challenged the sufficiency of the evidence for voluntary manslaughter or aggravated assault. *See id.* at 8–9.

Upon Appellant's petition, this Court granted allocatur to consider whether trial counsel's guilt-conceding strategy should be deemed *per se* prejudicial. In order to have the benefit of a full and complete record, in a *per curiam* order dated December 22, 2004, this Court also remanded the matter to the PCRA court for a limited hearing on whether counsel acted without Appellant's consent in conceding guilt on the charge of voluntary manslaughter. The PCRA court, again per Judge Hughes, held the required hearing on January 18, 2005. Trial counsel (Attorney Savino) testified at the hearing and admitted that he never specifically discussed his closing argument with Appellant, *see* N.T. Jan. 18, 2005, at 20, 23, although he maintained that he and Appellant both understood that there was no basis for a self-defense claim and, after hearing the Commonwealth's evidence at trial, that there was no possibility of acquittal. *See id.* at 32, 37. Appellant, for his part, testified that he had wanted to "beat this case on self defense." *Id.* at 65. However, he conceded that he never discussed that possibility with Attorney Savino; moreover, he was unable to identify any harm that might have befallen him had he not fired at the unarmed victims. *See id.* at 48, 59–72.

At the conclusion of the hearing, the PCRA court made factual findings, including that: Appellant was fully aware that there was no possibility he would be acquitted; he knew his "best strategic defense" was to seek a conviction of voluntary manslaughter; he was initially "elated" to have been found guilty of that offense; and he only became dissatisfied when a

lengthy sentence was imposed. *Id.* at 74, 78–79. The court elaborated and concluded as follows:

> [Appellant] may not have known the words Louis Savino would use but he absolutely knew that Louis Savino's strategy was to get voluntary manslaughter out of a case that when presented in the Commonwealth's favor looked like first degree murder. And Lou Savino did a masterful job of chipping away at the Commonwealth's evidence to bring this down to manslaughter. So I don't see that there are further questions necessary to elucidate me on the credibility of [Appellant] continuing to say that he did not understand what he confronted at this proceeding. He understood fully that he faced death and he walked out of there with his life. He just doesn't like the sentence and that's the bottom line.

*Id.* at 74–76.

With these findings now of record, the matter has been returned to this Court for resolution of the *per se* prejudice question. Again, we recognize that this claim does not reach us directly, but is cognizable only as a component of Appellant's derivative claim of ineffective assistance of appellate counsel. *See supra* note 2. As this issue is a question of law, our scope of review is plenary and our standard of review is de novo.

 To safeguard the fundamental right to a fair trial, a criminal defendant is entitled to the effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984); *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970).[5] Counsel is presumed effective, and the

---

5. The federal Constitution guarantees to criminal defendants the right to the assistance of counsel. *See* U.S. Const. amend. VI. This provision has been made applicable to the states through the Fourteenth Amendment. *See Gideon v. Wainwright,* 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963); *see also McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970) (recognizing that "the right to counsel is the right to the effective assistance of counsel"). The corresponding provision under the Pennsylvania Con-

appellant bears the burden of proving otherwise. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *Commonwealth v. Carpenter,* 555 Pa. 434, 449, 725 A.2d 154, 161 (1999). In *Strickland,* the United States Supreme Court explained that the benchmark for judging any claim of ineffectiveness is whether the attorney's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2064. *Strickland* set forth a two-part, performance-and-prejudice test whereby the appellant must show that counsel's stewardship fell below an objective standard of reasonableness, and there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *See id.* at 688, 694, 104 S.Ct. at 2064, 2068.[6]

As discussed, the Superior Court denied relief upon finding that Appellant was not actually prejudiced by counsel's actions. Appellant does not directly contest this determination but instead urges this Court to hold that counsel's concession of guilt to the lesser charge was presumptively prejudicial, thereby relieving him of the burden of proving harm. In support, Appellant highlights that, on the same day the United States Supreme Court filed *Strickland,* it also issued its companion decision in *United States v. Cronic,* 466 U.S. 648, 653–56, 104 S.Ct. 2039, 2043–45, 80 L.Ed.2d 657 (1984), acknowledging that certain cases entail a level of inadequacy on the part of counsel that is of such a quality that prejudice is automatically assumed. Appellant urges, as he did before the PCRA court and the Superior Court, that trial counsel's concession of guilt before the trial court so undermined the adversarial nature of the proceedings as to constitute a "structural defect" in the proceedings, thus making it proper to resolve the present case under the presumed prejudice stan-

stitution states that, "[i]n all criminal prosecutions, the accused hath a right to be heard by himself and his counsel. . . ." PA CONST art. I, § 9.

6. This Court has clarified that the test for counsel ineffectiveness under the United States Constitution is coterminous with the three-part test applied by this Court. *See, e.g., Commonwealth v. Bryant,* 579 Pa. 119, 135, 855 A.2d 726, 735 (2004).

dard of *Cronic*, rather than by reference to *Strickland's* performance-and-prejudice test.[7]

A number of other courts have addressed the central question presented in this appeal: whether, and under what circumstances, prejudice should be legally assumed when the defendant has pleaded not guilty, but counsel, facing overwhelming evidence of guilt, decides as a strategic matter to admit a certain level of culpability in order to preserve credibility with the fact-finder so that his or her argument for a lesser degree of guilt (or for a lenient sentence) will have a higher chance of succeeding. On one hand, admitting guilt almost always results in a guilty verdict to at least some charge; at the same time, however, it may be difficult to conceive of how anything but a guilty verdict could result from the evidence presented, and counsel's strategy may appear to have been the best way to avoid a worst-case scenario under the circumstances.

Jurisdictions have not been uniform in resolving this issue. Some have applied a presumed-prejudice rule to situations such as the present one, often on the view that only the defendant is entitled to plead guilty, and—as Appellant urges here—counsel's admission of any level of criminal liability prior to the fact finder's verdict amounts to the equivalent of a guilty plea.[8] Among these jurisdictions, some have deemed relevant the question of whether counsel acted contrary to his

**7.** Although *Cronic* itself did not involve presumptively ineffective assistance—indeed, the Court reversed the decision of the federal appellate court because the latter had erroneously applied a rule of assumed prejudice, *see id.* at 666–67 & n. 41, 104 S.Ct. at 2051 & n. 41—the case has become associated with an exception to *Strickland* due to its recognition that prejudice may properly be presumed in some instances.

**8.** *See, e.g., Francis v. Spraggins,* 720 F.2d 1190, 1194 (11th Cir.1983); *People v. Carter,* 41 Ill.App.3d 425, 354 N.E.2d 482, 485 (1976); *Jones v. State,* 110 Nev. 730, 877 P.2d 1052 (1994); *State v. Harbison,* 315 N.C. 175, 337 S.E.2d 504, 507–08 (1985); *see also Wiley v. Sowders,* 647 F.2d 642 (6th Cir.1981) (counsel admitted guilt to all charges at the close of evidence and pleaded for mercy in sentencing; although actual prejudice was found in light of the dearth of evidence, the court suggested that counsel's actions fatally undermined the defendant's Sixth Amendment rights even apart from actual prejudice, as the concession was the "functional equivalent" of a guilty plea).

client's expressed wishes. *See, e.g., State v. Carter,* 270 Kan. 426, 14 P.3d 1138, 1148 (2000) (finding *per se* prejudice where counsel forwarded a guilt-based defense against his client's wishes). In one instance, the defendant had not only pleaded not guilty, but had testified during trial and affirmatively proclaimed his innocence as to all charges. Under those circumstances, counsel's later admission that the defendant was culpable of a lesser charge, even in light of powerful evidence of guilt, was deemed presumptively prejudicial as it contradicted his client's trial testimony. *See State v. Anaya,* 134 N.H. 346, 592 A.2d 1142, 1147 (1991).

On the other side of the ledger, a number of jurisdictions have refused to apply a *per se* prejudice standard in every case where counsel admits guilt as to a particular charge, reasoning that such may reflect a sound tactical decision in view of the circumstances of the case.[9] In fact, this Court has

9. *See, e.g., United States v. Gomes,* 177 F.3d 76, 83 (1st Cir.1999); *Farrington v. Senkowski,* 214 F.3d 237, 244 (2d Cir.2000); *Bell v. Evatt,* 72 F.3d 421, 429 (4th Cir.1995) (distinguishing "statements that amount to mere tactical retreats [i.e., concessions to a lesser charge] from those that parlay a complete surrender [i.e., a complete concession to all charges]"); *Underwood v. Clark,* 939 F.2d 473, 474 (7th Cir.1991) (Posner, J.) ("The lawyer's tactic was reasonable, and though ... we cannot say it had the consent of the client, a lawyer is not required to consult with his client on tactical moves." (citing *United States v. Joshi,* 896 F.2d 1303, 1307–08 (11th Cir.1990))); *Lingar v. Bowersox,* 176 F.3d 453, 459 (8th Cir.1999); *People v. Cain,* 10 Cal.4th 1, 40 Cal.Rptr.2d 481, 892 P.2d 1224, 1241 (1995); *Commonwealth v. Arriaga,* 438 Mass. 556, 781 N.E.2d 1253, 1275 (2003); *Williams v. State,* 791 So.2d 895, 899–900 (Miss.Ct.App.2001); *Abshier v. State,* 28 P.3d 579, 594 (Okla.Crim.App.2001); *State v. Silva,* 106 Wash.App. 586, 24 P.3d 477, 483 (2001); *State v. Gordon,* 262 Wis.2d 380, 663 N.W.2d 765, 773–74 (2003) (collecting cases); *see also Anderson v. Calderon,* 232 F.3d 1053, 1089 (9th Cir.2000) (holding that counsel's decision to admit guilt of murder in the face of overwhelming evidence, while arguing diminished capacity as to burglary, was a viable strategic choice designed to save the defendant's life, and thus, survived scrutiny under *Strickland* ), *overruled on other grounds, Osband v. Woodford,* 290 F.3d 1036, 1043 (9th Cir.2002). In *Anderson,* the Ninth Circuit distinguished its prior case of *United States v. Swanson,* 943 F.2d 1070, 1076–78 (9th Cir.1991), in which it found *per se* prejudice under *Cronic* because counsel had conceded that all disputed factual issues were proved beyond a reasonable doubt, thus essentially depriving the defendant of counsel during that phase of the proceedings. In *Anderson,* by

determined that, under some circumstances, admitting obvious guilt can constitute effective assistance. In *Commonwealth v. DeHart,* 539 Pa. 5, 650 A.2d 38 (1994), the defendant, who was incarcerated at a state prison, fled from his worksite outside the prison grounds and was arrested some distance away in Pottstown, Pennsylvania. He was charged with, *inter alia,* escape and murder, as part of a single criminal episode. In guilt-phase closing arguments, counsel admitted that his client was guilty of escape. In response to the defendant's subsequent post-conviction claim that this admission amounted to ineffective assistance, the *DeHart* court indicated:

> Based on the overwhelming evidence that Appellant had escaped from prison, trial counsel's actions can certainly be considered reasonable in view of the circumstances of this case. In order to maintain his credibility and not antagonize the jury, counsel may have conceded the escape charge in an effort to defend against the other more serious charges which could have resulted in the imposition of a death sentence. Trial counsel had a reasonable basis for his actions, and therefore, Appellant's claim of ineffectiveness must fail.

*Id.* at 18, 650 A.2d at 44; *see also Commonwealth v. Johnson,* 572 Pa. 283, 307, 815 A.2d 563, 577 (2002) (finding that "counsel had a reasonable basis for conceding Johnson's presence at the [crime] scene and some degree of complicity and, thus, counsel was not ineffective" in presenting a guilt-based defense); *Commonwealth v. Lofton,* 448 Pa. 184, 189, 292 A.2d 327, 330 (Pa.1972) (finding that counsel's admission of guilt of felony murder (then a form of first-degree murder), in order to concentrate on avoiding the death penalty, was not ineffective as it had a reasonable basis designed to advance the client's interests).

Appellant does not explain why *DeHart* should not control the outcome here. Additionally, although the two post-*Cronic* decisions listed above—*DeHart* and *Johnson*—are silent on the question of whether *Cronic* or *Strickland/Pierce* presented

contrast, counsel only conceded guilt on the charge which was "obvious," and defended against the other offenses.

the correct paradigm for review (suggesting that they may have simply assumed, without deciding, that the *Strickland/Pierce* standard applied), we are nonetheless satisfied that the alleged defect in Attorney Savino's representation should be judged according to *Strickland/Pierce*, and not *Cronic*.

*Cronic* delineated a category of cases in the ineffectiveness arena where prejudice is presumed: the Court suggested, for example, that if counsel is physically absent or "entirely fails to subject the prosecution's case to meaningful adversarial testing," no showing of prejudice is necessary. *Id.* at 659, 104 S.Ct. at 2039. Referencing prior Sixth Amendment cases, the Court also indicated that, even where counsel is present, surrounding circumstances may make it so unlikely that any lawyer could provide effective assistance that ineffectiveness is appropriately presumed. The Court pointed to *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), as an example of such a scenario, as the trial judge in that matter had, on the eve of a capital trial, appointed as defense counsel an out-of-state attorney who was unfamiliar with local customs and procedures and had had no opportunity to prepare. *See Cronic*, 466 U.S. at 660–61, 104 S.Ct. at 2047–48. Finally, in a footnote, the Court cited cases in which it had found a Sixth–Amendment error due to actual or constructive denial of counsel by government action. *See Cronic*, 466 U.S. at 659 n. 25, 104 S.Ct. at 2047 n. 25. *See generally Bell v. Cone*, 535 U.S. 685, 695–96 & n. 3, 122 S.Ct. 1843, 1851 & n. 3, 152 L.Ed.2d 914 (2002) (summarizing the *Cronic* categories of presumed prejudice).[10] Courts have additionally assumed

10. Outside of the ineffectiveness area, the Supreme Court has also established a "very limited class of cases" in which prejudice is presumed. *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999) (citing *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (biased trial judge); *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986) (racial discrimination in selection of grand jury); *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984) (denial of self-representation at trial); *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (denial of public trial); *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993) (defective reasonable doubt instruction); *Gideon v.*

prejudice where counsel is physically present but substantially disabled from performing essential functions.[11] In post-trial proceedings, as well, counsel's acts or omissions may under some circumstances be deemed presumptively prejudicial, entitling the post-conviction petitioner to automatic relief.[12]

■ It is important to note, however, that the defining feature of all of these of cases is that the acts or omissions of counsel were of the type that are virtually certain to undermine confidence that the defendant received a fair trial or that the outcome of the proceedings is reliable, primarily because

*Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (complete denial of counsel)).

11. *See, e.g., Geders v. United States*, 425 U.S. 80, 88, 96 S.Ct. 1330, 1335, 47 L.Ed.2d 592 (1976) (counsel prohibited from consulting with defendant during a 17–hour overnight recess); *Javor v. United States*, 724 F.2d 831, 834 (9th Cir.1984) (counsel present but asleep); *State v. Keller*, 57 N.D. 645, 223 N.W. 698, 700 (1929) (counsel present but severely intoxicated); *see also Holloway v. Arkansas*, 435 U.S. 475, 484, 489–90, 98 S.Ct. 1173, 1178–79, 1181, 55 L.Ed.2d 426 (1978) (presuming prejudice where the trial court required a single attorney, over repeated objections, to represent multiple co-defendants with conflicting interests); *but cf. Cuyler v. Sullivan*, 446 U.S. 335, 348–49, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980) (declining to extend *Holloway* and holding that, absent objection, a defendant must demonstrate that an alleged conflict of interest affected the adequacy of his attorney's representation).

12. *See, e.g., Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (explaining that counsel's failure to perfect a first appeal as of right results in *per se* prejudice because the appeal constitutes an integral part of the state's procedure for finally adjudicating the defendant's guilt or innocence); *Rodriquez v. United States*, 395 U.S. 327, 330, 89 S.Ct. 1715, 1717, 23 L.Ed.2d 340 (1969) (failure to file direct appeal presumptively prejudicial); *Commonwealth v. Lantzy*, 558 Pa. 214, 225, 736 A.2d 564, 571 (1999) (holding that counsel's failure to file a requested direct appeal automatically satisfies *Strickland's* prejudice prong in light of *Evitts* ); *Commonwealth v. Halley*, 582 Pa. 164, 171, 870 A.2d 795, 800 (2005) (extending *Lantzy's* holding to the failure to file a statement of matters complained of on appeal, as a prerequisite to appellate merits review); *cf. Roe v. Flores–Ortega*, 528 U.S. 470, 484, 120 S.Ct. 1029, 1038, 145 L.Ed.2d 985 (2000) (holding generally that, where counsel fails to file a timely appeal that was not requested, relief is unavailable under a *per se* prejudice theory; rather, *Strickland* applies and a post-conviction petitioner must demonstrate that counsel rendered deficient performance and there is a reasonable probability that he would have made a timely decision to appeal had counsel appropriately consulted with him).

they remove any pretension that the accused had counsel's reasonable assistance during the critical time frame. In this regard, it is worth noting that the portion of the *Cronic* decision explaining the theory underlying the concept of presumptive prejudice begins by observing that effective assistance is constitutionally guaranteed not for its own sake, but because of its effect upon the accused's ability to receive a fair trial. *Cronic* stated that, although counsel is ordinarily presumed competent and the burden rests upon the defendant to demonstrate a constitutional violation, some circumstances are so likely to result in actual prejudice that the cost of litigating their effect in particular cases is unjustified. *See Cronic*, 466 U.S. at 658, 104 S.Ct. at 2046. Thus, the *Cronic* exception is rooted in the need to ensure a fair trial and the waste of resources entailed in litigating prejudice where the lack of a fair trial is a virtual certainty. *See generally Florida v. Nixon*, 543 U.S. 175, 189–91, 125 S.Ct. 551, 562, 160 L.Ed.2d 565 (2004) (faulting the Florida Supreme Court for applying *Cronic* instead of *Strickland* in circumstances similar to those presented here, where the state court had "failed to attend to the realities" of the situation facing defense counsel).

■ As time has demonstrated, both before and after *Cronic*, there are multiple scenarios in which a defense attorney may reasonably determine that the most promising means of advancing his client's interests is to admit what has become plain to all concerned—that his client did in fact engage in at least some of the underlying conduct complained of—but either to argue for conviction of a less severe offense, or to plead for mercy in sentencing based upon the facts viewed in a light favorable to the defendant. We conclude, therefore, that the *Cronic* exception to *Strickland* was not intended to be triggered by the type of action undertaken by Attorney Savino, at least in the absence of some additional circumstance which makes counsel's concession of guilt especially prejudicial (such as where counsel directly contradicts his client's trial testimony, as in *Anaya* ).[13]

13. Appellant does not argue that any such circumstance exists here.

This understanding of the limited application of *Cronic* is supported by recent decisions of the United States Supreme Court. In *Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002), for example, the Court clarified that *Cronic* is limited to cases where the magnitude of counsel's error is such that the verdict is almost certain to be unreliable. *See id.* at 166, 122 S.Ct. at 1241 (citing *Cronic*, 466 U.S. at 659 & n. 26, 104 S.Ct. at 2047 & n. 26). *Bell v. Cone*, 535 U.S. 685, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002), is also instructive. After the defendant was convicted of first-degree murder, counsel made an opening statement at the sentencing phase arguing for a life sentence; presentation of aggravating and mitigating evidence ensued. The junior prosecutor then provided a "low key" closing argument in expectation that the lead prosecutor, who was described as an extremely effective advocate, would, in rebuttal, urge the jury to impose the death penalty. To forestall such a rebuttal, counsel waived his summation. The defendant argued on post-conviction review that his case fit within the *Cronic* exception because counsel's omission had "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659, 104 S.Ct. at 2047. The Supreme Court disagreed, explaining that,

> [w]hen we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said, "if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing." *Cronic, supra,* at 569, 104 S.Ct. [at 2047] (emphasis added). Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic,* this difference is not of degree but of kind.

*Id.* at 696–97, 122 S.Ct. at 1851 (emphasis added by *Bell* court).

Presently, as well, Attorney Savino's strategic decision to concede guilt only to manslaughter during closing arguments

is qualitatively different from a complete failure to subject the state's case to adversarial testing as contemplated by *Cronic* and its progeny. The Commonwealth sought a murder conviction, and counsel argued vigorously (and successfully) that such a result would be inappropriate. There is no indication, moreover, that counsel failed to engage in appropriate cross-examination, adduce evidence favorable to the defendant, or make appropriate objections during the trial. It was only when the presentation of evidence was complete and counsel realized that expecting an acquittal on the homicide charge was unrealistic, that he decided to advocate in favor of the lowest level of homicide possible under the circumstances. *Accord Haynes v. Cain,* 298 F.3d 375, 381–82 (5th Cir.2002) (*en banc* ).[11]

We also find support for this position in the Supreme Court's very recent decision in *Florida v. Nixon,* 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004).[15] In that matter, Nixon

**14.** Appellant argues that this case is similar to *Lantzy,* where prejudice was presumed in light of counsel's failure to file a requested direct appeal. *See* Brief for Appellant at 38–40. We disagree, as *Lantzy* involved the absence of any action by counsel at a critical stage (the filing of a direct appeal as of right), whereas here counsel was undoubtedly present and advocating on behalf of his client; it is the nature of that advocacy that is at issue, namely, whether it amounted to a compete failure to subject the prosecution's case to adversarial testing. As indicated, we find that it did not.

Appellant also relies to some extent upon the *Holman* decision. *See id.* at 29–30. However, the attorney in *Holman* conceded guilt at the beginning of trial, not at the end. In a passage that the PCRA court found particularly instructive, *Holman* explained that

[t]his was not a situation where the concession was made at the very end of trial, where the attorney realized after the close of evidence that there was no hope of a favorable verdict and that conceding guilt to one charge would hopefully preserve some credibility for the defense's arguments opposing the other counts. Rather, Holman's attorney decided from the very beginning that Count I [of the indictment] was not worth fighting over and relinquished those constitutional rights of his client which Rule 11 [of the Federal Rules of Criminal Procedure] was designed to protect.

*Holman,* 314 F.3d at 843.

**15.** *Nixon* was issued at approximately the same time this Court entered its *per curiam* order remanding the present case to the PCRA court for an evidentiary hearing.

had confessed his guilt to the police and described in graphic detail how he kidnapped and killed his victim. The state charged him with first-degree murder and sought the death penalty. After Nixon pleaded not guilty, defense counsel deposed all of the state's witnesses and ultimately concluded that Nixon's guilt was not subject to reasonable dispute. Faced with the inevitability of going to trial under such circumstances, counsel determined that his best course would be to admit culpability, thereby preserving credibility for penalty phase evidence of Nixon's mental instability and for pleas to spare his life. Nixon gave counsel little assistance in preparing the case and was unresponsive when counsel attempted, on several occasions, to explain his guilt-based strategy. The Florida Supreme Court found that the defense attorney's concession, forwarded without Nixon's affirmative acceptance, was the functional equivalent of a guilty plea because it allowed the state's guilt phase case to proceed without opposition. The court accordingly held that these actions amounted to *per se* ineffectiveness under *Cronic*, notwithstanding that counsel's strategy may have been in Nixon's best interests. *See Nixon v. State*, 857 So.2d 172 (Fla.2003).

In a unanimous opinion authored by Madame Justice Ginsburg, the Supreme Court reversed, holding that counsel's strategy of conceding guilt did not automatically render his performance deficient. While reaffirming that a defense lawyer lacks authority to enter a guilty plea without the client's express consent, *see Nixon*, 543 U.S. at 186–88, 125 S.Ct. at 560 (citing *Brookhart v. Janis*, 384 U.S. 1, 6–7, 86 S.Ct. 1245, 1248, 16 L.Ed.2d 314 (1966), and *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969)), the Supreme Court differed with the Florida court on the question of whether counsel's tactics were the "functional equivalent" of such a plea. *See id.* at 188–89, 125 S.Ct. at 561. The Supreme Court reasoned that, notwithstanding defense counsel's concession, Nixon retained all the rights accorded a defendant during a criminal trial, including the right to force the state to adduce competent, admissible evidence during the guilt phase of trial sufficient to establish the essential ele-

ments of the offenses charged; the Court noted further that "the defense reserved the right to cross-examine witnesses for the prosecution and could endeavor, as [defense counsel] did, to exclude prejudicial evidence. In addition, in the event of errors in the trial or jury instructions, a concession of guilt would not hinder the defendant's right to appeal." *Id.* (contrasting, as well, the decision in *Boykin,* 395 U.S. at 242–43 & n. 4, 89 S.Ct. at 1712 & n. 4, where the Court stated that a guilty plea is "more than a confession which admits that the accused did various acts," it is a "stipulation that no proof by the prosecution need be advanced"). The Supreme Court ultimately held that the Florida Supreme Court had erred by applying *Cronic,* rather than evaluating counsel's actions under *Strickland. See Nixon,* 543 U.S. at 188–89, 125 S.Ct. at 561.

Attempting to limit *Nixon's* scope, Appellant points to several perceived differences between that dispute and the present matter. Here, for example, Appellant maintains that it is not apparent from the record that the Commonwealth was seeking the death penalty.[16] Although Appellant does not fully explain the relevance of this distinction, it appears aimed at undermining the position that Attorney Savino's strategic choice was reasonable, as, unlike in *Nixon,* there was presumably no need to insulate a sentencing hearing at which the death penalty was imposable from the Commonwealth's "aggressive evidence" of guilt. *Id.* at 188, 125 S.Ct. at 561. Even to the extent that this consideration can be seen as having supplied one basis for counsel's actions in *Nixon,* it does not follow that the Court's holding in that case was meant to apply only in death penalty cases, particularly as the specific justifi-

16. The Commonwealth takes issue with this assertion, although it does not cite to the record. Our own review is inconclusive. There is no Rule 802 notice of aggravating circumstances, *see* Pa.R.Crim.P. 802, but the district attorney's charging document reflects two aggravating circumstances delineated by the capital sentencing statute, and the jury waiver sheet shows Appellant's acknowledgment that he was charged with first-degree murder carrying a maximum sentence of "life/death." Additionally, as discussed, Judge Hughes indicated at the conclusion of the PCRA hearing that Appellant "faced death and ... walked out of there with his life." In all events, this factual question lacks dispositive import for the reasons stated infra.

cation for the attorney's chosen strategy was not central to the *Nixon* Court's conclusion that counsel's course of action should be tested by reference to the actual prejudice standard of *Strickland.*

More plausibly, Appellant highlights that *Nixon* involved a scenario in which defense counsel had explained his strategy in advance and had tried, but failed, to obtain his client's approval; whereas, here, Attorney Savino apparently conceded guilt only upon the *tacit* understanding that both he and his client understood from the state of affairs at trial that this comprised the best opportunity to attain a favorable verdict. We do find it somewhat troubling that counsel did not, at a minimum, expressly apprise Appellant in advance of his intention to admit guilt of voluntary manslaughter. This would at least have given Appellant an opportunity to articulate any objections or reservations to such a course of action. Additionally, the *Nixon* Court did make note of the defense counsel's attempts in this regard, when it stated that counsel, as a general matter, "has a duty to discuss potential strategies with the defendant." The Court continued, "[b]ut when a defendant, informed by counsel, neither consents nor objects to the course counsel describes as the most promising means to avert a sentence of death, counsel is not automatically barred from pursuing that course." *Id.* at 178, 125 S.Ct. at 555. Appellant highlights this language and urges us to construe *Nixon* narrowly as applying only in capital cases where defense counsel has informed the defendant that the optimal strategy is to concede guilt but the defendant fails to respond. *See* Brief for Appellant at 57.

While Appellant's argument is not without some foundation, we ultimately do not read *Nixon* so narrowly. On review of the opinion as a whole, the Court's emphasis was upon the difference between a guilty plea and a reasoned strategy of conceding guilt while still preserving all of the defendant's other rights, rather than on the fact of counsel's unsuccessful attempts to elicit a response from his client after formulating his defense strategy. In this respect, the Supreme Court was focused more on the integrity of the adversarial proceedings

as such, notwithstanding counsel's guilt-based defense. For example, after recognizing that the prosecutor was still obliged to present sufficient evidence to support a verdict of guilt beyond a reasonable doubt in spite of counsel's strategy, the Court continued:

> Nixon nevertheless urges, relying on *Brookhart v. Janis* [, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966) ], that this Court has already extended the requirement of "affirmative, explicit acceptance" to proceedings "surrender[ing] the right to contest the prosecution's factual case on the issue of guilt or innocence." Defense counsel in *Brookhart* had agreed to a "prima facie" bench trial at which the State would be relieved of its obligation to put on "complete proof" of guilt or persuade a jury of the defendant's guilt beyond a reasonable doubt. In contrast to *Brookhart,* there was in Nixon's case no "truncated" proceeding, shorn of the need to persuade the trier "beyond a reasonable doubt," and of the defendant's right to confront and cross-examine witnesses. While the "prima facie" trial in *Brookhart* was fairly characterized as "the equivalent of a guilty plea," the full presentation to the jury in Nixon's case does not resemble that severely abbreviated proceeding. *Brookhart,* in short, does not carry the weight Nixon would place on it.

*Nixon,* 543 U.S. at 188–89, 125 S.Ct. at 561 (second alteration in original).

■ In this passage, the Court's discounting of the centrality of "affirmative, explicit acceptance" to a guilt-based defense, combined with its primary distinction between Nixon's attorney's strategy and the disapproved action in *Brookhart* of releasing the prosecution from its evidentiary burden at the beginning of trial, convinces us that the mere fact that Nixon's attorney tried unsuccessfully to obtain approval from his unresponsive client was not a dispositive factor in that case. Moreover, the PCRA court here made an express factual finding that Appellant understood counsel's intentions in advance of the closing argument, making his situation only

minimally different from that of the defendant in *Nixon*. Accordingly, we hold that counsel's actions in this case did not comprise *per se* prejudice under the Sixth Amendment.[17]

For the reasons stated, Appellant's underlying ineffective assistance of counsel claim must be evaluated pursuant to the *Strickland/Pierce* performance-and-prejudice standard. As Appellant does not contest the Superior Court's determination that counsel's actions did not result in actual prejudice, relief is unavailable on that claim. Accordingly, the judgment of the Superior Court, affirming the common pleas court's dismissal of Appellant's PCRA petition, is affirmed.

Chief Justice CAPPY, Justice NIGRO, Justice NEWMAN and Justice EAKIN and BAER join the opinion.

Justice CASTILLE files a concurring opinion.

**17.** Appellant argues in the alternative that, even if Attorney Savino's performance does not constitute a structural defect under federal law, this Court should expand the *Cronic* doctrine for purposes of Article I, Section 9 of the Pennsylvania Constitution (*see supra* note 5), to include the present case. Appellant suggests that this Court may expand on federal guarantees pursuant to *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), and notes specifically that the state charter, like the federal one, safeguards to criminal defendants the right to due process, the right to remain silent, and the privilege against self-incrimination, all of which, he maintains, are implicated here. Appellant's presentation to this Court is not adequately developed. He acknowledges his burden under *Edmunds* to analyze the text and history of the state provision, as well as case law from other states and policy considerations of state and local concern within modern Pennsylvania jurisprudence, *see Edmunds*, 526 Pa. at 390, 586 A.2d at 895, but fails to provide analysis along these lines other than to state that the Pennsylvania Constitution was adopted prior to the federal Constitution, and that some of its language was derived from the Magna Charta. As this is an insufficient basis to analyze whether the *Cronic* exception should be applied more expansively under the state charter than the federal one, the issue must be deemed waived in this Court. *See Commonwealth v. Williams*, 557 Pa. 207, 223, 732 A.2d 1167, 1175 (1999).

As a final matter, Appellant contends that his due process rights were compromised by counsel's admission of guilt. This contention, however, is subsumed within Appellant's ineffectiveness claim and does not provide a separate basis for relief. Accordingly, the prejudice requirement also pertains.

Justice CASTILLE, concurring.

I join the Majority Opinion with the exception of the statement suggesting that it is "troubling that counsel did not, at a minimum, expressly apprise Appellant in advance of his intention to admit guilt of voluntary manslaughter" and the ensuing discussion of that point. *See* Majority op. at 305–07, 888 A.2d at 722.

The issue posed on this appeal is one of counsel ineffectiveness and, as the Majority properly notes, the claim must be measured by *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires a showing of actual prejudice, and not by *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), which permits a presumption of prejudice in certain, very limited instances where the defendant is effectively denied meaningful counsel at all. As the Majority necessarily notes in rejecting appellant's attempt to expand *Cronic*, nothing in existing law requires a specific advance disclosure from counsel that he intends to concede a lesser offense in argument, and that is all that is necessary to resolve the question actually before us on this collateral attack. This is so because even if such a requirement were to be foisted upon defense counsel in the future, such a requirement could not operate retroactively to call into question the historical performance of counsel here. *Commonwealth v. Hughes*, 581 Pa. 274, 865 A.2d 761, 819 (2004) (Castille, J., joined by Eakin, J., concurring and dissenting) ("collateral attack is simply not the place for courts to innovate new holdings concerning trial issues, since counsel cannot be faulted for failing to predict those new rulings.").

It may be preferable that counsel "specifically discuss" an intention to concede a lesser offense in closing before he does so, but for purposes of *Strickland* analysis I am not troubled when such an affirmative disclosure does not occur. Counsel's limited "concession" in this bench trial, where the evidence easily supported a verdict of first degree murder, was perfectly rational and it was spectacularly successful. Far from being "prejudiced" by counsel's conduct, appellant should be

appreciative of the course the counsel undertook, whether appellant was consulted, or not.

In my view, to require counsel to discuss his specific intention with his client merely to permit the client to object or "express reservations" on the record delves too deeply into matters of trial tactics, and in a fashion which may seriously undermine counsel's effectiveness and the client's interests. This is particularly so where, as here, the trial is non-jury. Such a requirement would run the risk that the defendant will display to the factfinder a stubborn and unrealistic unwillingness to recognize any responsibility in a case where the course of trial has made it readily apparent that there is no colorable factual or legal defense to the lesser crime counsel intends to concede.[1] Where a trial is non-jury, this forced revelation may seriously undermine the only rational strategy available to counsel. In the real world in a case such as the one *sub judice,* counsel's "effective" performance under the Majority's preference may well ensure only that a stubborn client receives a verdict of murder, rather than one of manslaughter. Rather than intrude into such trial strategy matters, I would continue to trust in the professionalism and assumed competence of the trial defense bar.

---

1. In making this point, I am assuming appellant truly felt this way only for argument's sake; in reality, I suspect, he was relieved with the tactic and the verdict when rendered.