J-A26014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN E. SIMMINGER | : | |
| | : | |
| Appellant | : | No. 2451 EDA 2021 |

Appeal from the PCRA Order Entered November 15, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003208-2016

BEFORE:   BOWES, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 13, 2023**

Steven E. Simminger appeals from the order dismissing his petition filed
pursuant to the Post Conviction Relief Act ("PCRA").  We affirm.

The underlying facts of this case were previously summarized as follows:

In the early morning hours of March 13, 2016, Sean Boyd, Colin
McGovern, Casey Walsh and Gabby DiFrancesco were walking
around Rittenhouse Square in center city Philadelphia, looking for
a place to crash for the night.  Appellant was roaming the same
streets.  When Appellant and the four's paths crossed, Boyd made
a snide remark about the Jersey Devils' hat Appellant was
wearing. An argument ensued.  An unarmed Boyd and McGovern
approached Appellant.  Appellant took a knife out of his right coat
pocket.   As McGovern got closer, Appellant lunged, stabbing
McGovern in the stomach.  Appellant then lunged and slashed at
Boyd but missed.   McGovern then grabbed Appellant and both
landed on the ground, wrestling, with McGovern ending up on top.
Again, Appellant stabbed the unarmed McGovern, this time in the
heart.  Boyd pulled McGovern away and the two got several steps
away before McGovern collapsed from his wounds and soon died.

---

[*] Retired Senior Judge assigned to the Superior Court.

Appellant fled, returning to get his hat and another object before again fleeing. Appellant went home to New Jersey, returning to Philadelphia the next morning to the Veteran's Administration Hospital for treatment of a cut to his hand. The police were eventually called, Appellant arrested, and found among his possessions were two knives. His clothes were soaked with Colin McGovern's blood, as was one of the two knives. Appellant's cell phone displayed texts in which Appellant revealed that "he likes stabbing," stating that stabbing "Is a rush," "Is satisfying" and "Is what mother-fuckers deserve when they bother me."

*Commonwealth v. Simminger*, 221 A.3d 300 (Pa.Super. 2019) (non-precedential decision at 1-2) (cleaned up). One hour before the incident, Appellant texted his sister several messages, including "Somebody downtown is about to get taken, baby," "Fuck that. They were looking at me funny," "I'm on a mission," and "I need money." N.T. (Trial), 11/15/17, at 55-57.

Based on the foregoing, the Commonwealth charged Appellant with murder and possessing an instrument of crime ("PIC"). Following denial of Appellant's motions to quash and suppress, Appellant proceeded to a six-day jury trial. The Commonwealth presented, *inter alia*, video surveillance of the stabbing and the above-referenced text messages.

Appellant's defense centered on his mental health. In that regard, counsel presented the testimony of two experts: (1) Frank Dattilio, Ph.D., a clinical and forensic psychologist, and (2) Cyril Wecht, M.D., a forensic medical examiner. Counsel ultimately argued to the jury in closing argument that it should find that Appellant had been acting pursuant to imperfect self-defense

when he stabbed McGovern and, therefore, should be found guilty of voluntary manslaughter.[1]

The jury convicted Appellant of first-degree murder and PIC. Appellant was sentenced to life without the possibility of parole, plus two and one-half to five years of incarceration. Appellant filed a notice of appeal to this Court, challenging the sufficiency and weight of the evidence, the denial of his motion to suppress, and the admission of evidence relating to a prior arrest. This Court affirmed Appellant's judgment of sentence. *See id*. Appellant filed a petition for allowance of appeal to our Supreme Court, which the High Court denied. *See Commonwealth v. Simminger*, 223 A.3d 671 (Pa. 2020).

---

[1] We have explained the interplay between self-defense and improper self-defense thusly:

> Self-defense is a complete defense to a homicide charge if 1) the defendant reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force to prevent such harm; 2) the defendant did not provoke the threat that resulted in the slaying; and 3) the defendant did not violate a duty to retreat. Where the defendant has introduced evidence of self-defense, the burden is on the Commonwealth to disprove the self-defense claim beyond a reasonable doubt by proving that at least one of those three elements is absent. If the Commonwealth proves that the defendant's belief that deadly force was necessary was unreasonable but does not disprove that the defendant genuinely believed that he was in imminent danger that required deadly force and does not disprove either of the other elements of self-defense, the defendant may be found guilty only of voluntary manslaughter under the defense of imperfect self-defense.

*Commonwealth v. Jones*, 271 A.3d 452, 458 (Pa.Super. 2021).

- 3 -

On January 14, 2021, Appellant timely filed the instant PCRA petition, his first, with the assistance of counsel. Therein, he raised several claims of ineffective assistance of trial counsel. Thereafter, Appellant filed a supplemental petition.[2] The Commonwealth filed a motion to dismiss and Appellant filed an answer in response. The PCRA court issued notice of its intent to dismiss the petition without a hearing pursuant to Pa.R.Crim.P. 907. Appellant filed a response. On November 15, 2021, the PCRA court dismissed Appellant's PCRA petition.

This timely appeal followed. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925. Appellant presents the following issues for our consideration:

_____

[2] Appellant initially raised, *inter alia*, a claim that counsel was ineffective for failing to object to the admission of the text messages on the grounds of authenticity and hearsay. **See** PCRA Petition, 1/14/21, at ¶ 18; Memorandum of Law in Support of Petition for Post-Conviction Relief, 1/14/21, at 51-57. In his supplement, Appellant added a claim that counsel should have objected to the Commonwealth's statements about when the text messages occurred, which Appellant believed misled the jury. **See** Supplement to Petition for Post-Conviction Relief, 6/30/21, at 1-2 (unnumbered). Appellant filed the supplement without leave of court. Generally, unauthorized supplements are discouraged and any claims raised therein are waived. **See Commonwealth v. Brown**, 141 A.3d 491, 504 n.12 (Pa.Super. 2016) (citations omitted). However, where the PCRA court does not strike the supplement and addresses it in ruling on the PCRA petition, the PCRA court will be deemed to have implicitly permitted the filing of the supplement. **Id**. at 504 (citations omitted). Instantly, the PCRA court did not explicitly permit supplementation and did not discuss the merits of the supplemental claim in its Rule 907 notice, dismissal order, or Rule 1925(a) opinion. Nonetheless, the court acknowledged receipt of the supplement and heard argument on the supplemental claim. **See** N.T. (PCRA), 10/6/21, at 5-14. Thus, we will deem the supplement as having been implicitly permitted by the PCRA court.

(1) Did the PCRA court err in dismissing Appellant's PCRA petition without an evidentiary hearing where Appellant proffered evidence to establish that trial counsel was ineffective for failing to present testimony from a forensic psychiatrist to establish that [Appellant] did not have the specific intent required for first degree murder, and therefore, failing to present a viable mental health defense including that of insanity?[3]

---

[3] Appellant raised for the first time within this brief the specific claim that counsel was ineffective for failing to retain a psychiatric expert to establish an insanity defense. Thus, the Commonwealth asks this Court to find this portion of Appellant's first issue waived for failure to raise it before the PCRA court. *See* Commonwealth's brief at 11-12. Appellant, on the other hand, argues that he "is simply making a new argument to support the preserved issue of whether counsel was ineffective for not obtaining a psychiatrist's assistance to present a viable mental health defense." Appellant's reply brief at 3.

It is well-settled that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). "This requirement bars an appellant from raising a new and different theory of relief for the first time on appeal." *Commonwealth v. Phillips*, 141 A.3d 512, 522 (Pa.Super. 2016) (cleaned up). There are several distinct defenses related to mental health, which include imperfect self-defense, diminished capacity by way of voluntary intoxication, and insanity. *See supra* n.1 (defining imperfect self-defense, which will mitigate first-degree murder to voluntary manslaughter); *Commonwealth v. Padilla*, 80 A.3d 1238, 1263 (Pa. 2013) ("A defense of diminished capacity negates the element of specific intent, and thus mitigates first-degree murder to third-degree murder. . . . [T]o prove diminished capacity due to voluntary intoxication, a defendant must show that he was overwhelmed to the point of losing his faculties and sensibilities." (cleaned up)); *Commonwealth v. Andre*, 17 A.3d 951, 962 (Pa.Super. 2011) (explaining that if "the Commonwealth [is] unable to prove criminal intent because the defendant has met his burden regarding the cognitive incapacity aspect of the insanity defense, then the defendant must be adjudicated not guilty by reason of insanity").

In Appellant's PCRA petition, his claim assailing counsel's expert witness strategy was devoid of any mention of an insanity defense. Instead, he mentioned self-defense, imperfect self-defense, and intoxication. More generally, he argued that "based on the opinion of a psychiatrist, [Appellant's] actions demonstrate his unreasonable belief that he was in danger caused by

*(Footnote Continued Next Page)*

- 5 -

(2)     Did the PCRA court err in dismissing Appellant's PCRA petition without an evidentiary hearing where Appellant proffered evidence to establish that trial counsel was ineffective for failing to properly investigate and present fact witnesses regarding [Appellant's] historical mental health issues with family and friends?

(3)     Did the PCRA court err in dismissing Appellant's PCRA petition without an evidentiary hearing where Appellant proffered evidence to establish that trial counsel was ineffective at the time of closing argument when she conceded [Appellant's] competency and that he did not have psychosis?

(4)     Did the PCRA court err in dismissing Appellant's PCRA petition without an evidentiary hearing where Appellant proffered evidence to establish that trial counsel was ineffective for failing to object to specific jury instructions that were clearly not supported by the evidence as there was no testimony from a psychological position for an insanity defense?

(5)     Did the PCRA court err in dismissing Appellant's PCRA petition without an evidentiary hearing where Appellant proffered evidence to establish that trial counsel was ineffective for coercing [Appellant] to waive the defense of voluntary intoxication, and thus, waiving the corresponding

---

his mental health conditions and that he did not have the specific intent required for first-degree murder." Memorandum of Law in Support of Petition for Post-Conviction Relief, 1/14/21, at 20. Additionally, he contended that his "judgment was impaired and 'diminished his ability to have the specific intent to commit murder.'" *Id*. at 21. Thus, the mental health defenses Appellant referenced and intimated at were imperfect self-defense and diminished capacity by way of voluntary intoxication, and those were the defenses the PCRA court addressed in considering this issue in its Rule 1925(a) opinion. *See* PCRA Court Opinion, 2/3/22, at 11-12. In fact, the PCRA court's Rule 1925(a) opinion addressing this issue is devoid of any discussion as to counsel's conduct in relation to an insanity defense. Accordingly, insofar as Appellant argues that counsel was ineffective for failing to retain an expert to establish an insanity defense, that theory of relief is waived for failure to raise it before the PCRA court. *See* Pa.R.A.P. 302(a).

jury instruction, which could result in a verdict less than first-degree murder?

(6)  Did the PCRA court err in dismissing Appellant's PCRA petition without an evidentiary hearing where Appellant proffered evidence to establish that trial counsel was ineffective for abandoning Appellant's defense of self-defense, which a defense expert witness had presented, by conceding in her closing argument that he was guilty of voluntary manslaughter?

(7)  Did the PCRA court err in dismissing Appellant's PCRA petition without an evidentiary hearing where Appellant proffered evidence to establish that trial counsel was ineffective for failing to object to the admission of hearsay evidence in the form of text messages located on his alleged cell phone at trial and when the Commonwealth misstated the facts in its closing argument concerning the timing of the text messages, as the Commonwealth did not properly authenticate the messages?

Appellant's brief at 7-8 (cleaned up).

On appeal from a PCRA court's decision, our scope of review is "limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party." *Commonwealth v. Johnson*, 236 A.3d 63, 68 (Pa.Super. 2020) (*en banc*) (cleaned up). The PCRA court's credibility determinations are binding on this Court when supported by the certified record, but we review its legal conclusions *de novo*. *Id*. When a PCRA court dismisses a PCRA petition without first holding an evidentiary hearing, this Court examines "whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary

hearing." ***Commonwealth v. Hart***, 199 A.3d 475, 481 (Pa.Super. 2018). Evidentiary hearings are required only when factual issues are in dispute. ***Id***.

All of Appellant's claims challenge the effective assistance of trial counsel. We observe that counsel is presumed to be effective and the petitioner bears the burden of proving otherwise. ***See Johnson***, ***supra*** at 68 (citation omitted). To do so, the petitioner must establish the following three elements:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different.

***Id***. (citations omitted). Failure to prove any of the three elements will result in dismissal of the ineffectiveness claim. ***Id***. (citation omitted).

The first prong involves a legal determination of whether the claim has arguable merit. ***See Commonwealth v. King***, 259 A.3d 511, 520 (Pa.Super. 2021). As to the second prong, this Court does "not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." ***Id***. (cleaned up). "The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success." ***Id***. (cleaned up). Finally, a petitioner establishes prejudice "if there is a reasonable probability

that, but for counsel's errors, the result of the proceeding would have been different." *Id*. at 521 (cleaned up).

Appellant's first two claims allege that counsel was ineffective for failing to call a witness. When a petitioner asserts that counsel was ineffective for failing to call a witness, he must establish, for purposes of the second and third prongs of the general ineffectiveness test, that: "(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial." ***Commonwealth v. Selenski***, 228 A.3d 8, 16 (Pa.Super. 2020) (cleaned up).

Upon review, the certified record supports the PCRA court's findings and we discern no error in the decision to dismiss these two claims. Thus, we affirm the PCRA court's dismissal of Appellant's first two claims on the basis of the thorough opinion of the PCRA court. Specifically, the PCRA court provided sound reasoning for concluding that the psychiatric testimony Appellant claims counsel should have utilized did not offer a greater chance for success. ***See*** PCRA Court Opinion, 2/3/22, at 6-12 (indicating that the new expert's opinions were largely based on "sheer speculation," and "a proposed alternate trial strategy based on conjecture cannot substantiate a claim for ineffective assistance of counsel"). Likewise, the PCRA court acted in its discretion in holding that Appellant was not prejudiced by counsel's

failure to call Appellant's family members as witnesses because their evidence would have been cumulative of Dr. Dattilio's testimony. *See id*. at 12-13.

Appellant next argues that counsel was ineffective during closing arguments when she stated that Appellant was competent and did not suffer from psychosis. We consider this claim mindful of the following:

> The right to effective assistance of counsel extends to closing arguments, the purpose of which is to sharpen and clarify the issues presented to the trier of fact. Because of the broad range of legitimate defense strategies at this stage of the proceeding, great deference is accorded counsel's tactical decisions in his closing presentation. A misstatement by counsel when referring to evidence does not necessarily demand relief, particularly because the jury is instructed that the arguments of counsel are not evidence. Although we do not disregard completely the reasonableness of other alternatives available to counsel, the balance tips in favor of a finding of effective assistance as soon as it is determined that trial counsel's decision had any reasonable basis.

*Commonwealth v. Cooper*, 941 A.2d 655, 664 (Pa. 2007) (cleaned up).

In the case *sub judice*, the PCRA court rejected Appellant's claim that counsel was ineffective for stating during closing argument that Appellant was competent where Appellant in fact was competent to stand trial and, when considered as a whole, counsel's closing argument "exhorted the defense theory of an imperfect self-defense excellently." PCRA Court Opinion, 2/3/22, at 13-16. Moreover, counsel's discussion of psychosis served to undermine the testimony of the Commonwealth's expert witness, who opined that Appellant did not suffer from psychosis, by emphasizing that the defense never claimed Appellant suffered from psychosis. Our review of the certified

record supports the PCRA court's findings and we discern no error in its decision. Accordingly, we affirm the dismissal of this claim.

Appellant next argues that counsel was ineffective for failing to object to the trial court instructing the jury on the insanity defense. We consider this claim pursuant to the following well-established principles:

> A trial court has broad discretion in formulating and delivering instructions to a jury. When reviewing the exercise of that discretion, an appellate court must evaluate the trial court's instruction as a whole to determine if it was fair or prejudicial. A trial court may use such language as it chooses, so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. We will not rigidly inspect a jury charge, finding reversible error for every technical inaccuracy, but rather evaluate whether the charge sufficiently and accurately apprises a lay jury of the law it must consider in rendering its decision. Error cannot be predicated on isolated excerpts of the charge, but it is the general effect of the charge that controls.

***Commonwealth v. Drummond***, ___ A.3d ___, No. 28 EAP 2021, 2022 WL 17171610, at *6 (Pa. Nov. 23, 2022) (cleaned up). The PCRA court aptly discussed its reasoning for dismissing this claim, the certified record supports its findings, and we discern no error in its decision. Accordingly, we affirm the dismissal of this claim on the basis of the PCRA court's analysis. ***See*** PCRA Court Opinion, 2/3/22, at 17-19 (rejecting Appellant's claim that counsel was ineffective for failing to object to a jury instruction regarding insanity because "[t]he evidence clearly was sufficient to warrant the instruction").

Appellant next argues that counsel rendered ineffective assistance by coercing Appellant to waive a voluntary intoxication defense. The PCRA court found the underlying claim lacked merit as Appellant had provided no evidence

- 11 -

of coercion and was colloquized by the trial court regarding counsel's strategic decision to forego the voluntary intoxication defense and Appellant's agreement with that strategy at the time of the charging conference. Moreover, the PCRA court concluded that Appellant failed to establish prejudice because the jury was still asked to consider a verdict less than first-degree murder by virtue of Appellant's claim of imperfect self-defense. *See* PCRA Court Opinion, 2/3/22, at 16-17. After review, the certified record supports the PCRA court's findings and we discern no error in its decision. Accordingly, we affirm the dismissal of this claim.

In his penultimate claim, Appellant argues that counsel provided ineffective assistance by abandoning Appellant's invocation of self-defense and conceding to the jury during closing argument that Appellant was acting pursuant to imperfect self-defense and, therefore, should be found guilty of voluntary manslaughter. Our Supreme Court has held that a "strategic decision to concede guilt only to manslaughter during closing arguments is qualitatively different from a complete failure to subject the state's case to adversarial testing[.]" *Commonwealth v. Cousin*, 888 A.2d 710, 720 (Pa. 2005), *abrogated on different grounds*, *Commonwealth v. Roebuck*, 32 A.3d 613 (Pa. 2011). Indeed,

> there are multiple scenarios in which a defense attorney may reasonably determine that the most promising means of advancing his client's interests is to admit what has become plain to all concerned—that his client did in fact engage in at least some of the underlying conduct complained of—but either to argue for conviction of a less severe offense, or to plead for mercy in

sentencing based upon the facts viewed in a light favorable to the defendant.

*Id*. at 719.

In the case *sub judice*, the PCRA court concluded that counsel was not ineffective for abandoning Appellant's claim of self-defense and conceding in closing argument that Appellant was guilty of voluntary manslaughter. The court found that Appellant presented no evidence that he objected to counsel's strategy and counsel's decision to encourage "the jury [to] find the lesser charge of voluntary manslaughter rather than a full self-defense was realistic, especially in light of the overwhelming evidence presented, including videos of the stabbings." PCRA Court Opinion, 2/3/22, at 19-21. The certified record supports the findings of the PCRA court and we discern no error in its decision to dismiss this claim. **See Cousin**, **supra** at 720 ("There is no indication, moreover, that counsel failed to engage in appropriate cross-examination, adduce evidence favorable to the defendant, or make appropriate objections during the trial. It was only when the presentation of evidence was complete and counsel realized that expecting an acquittal on the homicide charge was unrealistic, that he decided to advocate in favor of the lowest level of homicide possible under the circumstances."). Accordingly, we affirm the dismissal of this claim.

Finally, we turn to Appellant's arguments regarding the text messages. We begin with Appellant's supplemental PCRA claim that counsel was ineffective for failing to object to the Commonwealth's misstatement of the timeline for the text messages during closing arguments. Upon review, the

- 13 -

certified record reveals that the Commonwealth did not misstate the timeline for the text messages in its closing argument. Rather, the Commonwealth argued that the totality of the circumstances, which included the text messages from right before the murder about Appellant being on a mission, the messages a couple days prior about enjoying stabbing people who bother him, and the physical evidence regarding the stab wounds, evinced Appellant's specific intent to kill. **See** N.T. (Jury), 11/21/17, at 86-89. Therefore, Appellant's claim that counsel was ineffective for failing to object to the Commonwealth's misstatement is without merit and the PCRA court did not err in dismissing this claim.[4]

Next, Appellant argues that counsel was ineffective for failing to object to the admission of the text messages on the grounds of authenticity. The PCRA court offered a sufficient explanation why counsel's failure to object on these grounds warranted no relief as the underlying claim lacked merit. **See** PCRA Court Opinion, 2/3/22, at 21-23. Specifically, the cell phone was taken from Appellant's possession within hours of the incident and substantial circumstantial evidence supported the conclusion that Appellant was the author and receiver of the relevant text messages. **See id**. at 23 (observing that "the vast majority of the messages were with 'Stephanie', [Appellant's] sister's name" and "[n]umerous texts referred to mom and/or dad" and

---

[4] We observe that the PCRA court did not address this claim in its Rule 1925(a) opinion. However, we may affirm the decision of the PCRA court on any legal basis apparent from the record. **See Commonwealth v. Parker**, 249 A.3d 590, 595 (Pa.Super. 2021) (citation omitted).

Appellant's "imaginary friend, 'Harry'"). The certified record supports the findings of the PCRA court and we discern no error in its decision to dismiss this claim. Therefore, we affirm the dismissal of this claim on the basis of the PCRA court's opinion.[5] **See id**. at 21-23.

Finally, we turn to Appellant's claim that counsel was ineffective for failing to object to the admission of the text messages on hearsay grounds. This Court has held that when the Commonwealth proves that a defendant authored the relevant text messages, it is "proper for the trial court to admit those text messages into evidence under the party-opponent exception to the rule against hearsay." **Commonwealth v. Williams**, 241 A.3d 1094, 1103 (Pa.Super. 2020). As discussed *supra*, the Commonwealth established that Appellant authored the relevant text messages. Thus, the PCRA court did not err in dismissing Appellant's PCRA claim as the underlying claim lacks merit. **See Commonwealth v. Parker**, 249 A.3d 590, 595 (Pa.Super. 2021) ("This Court may affirm a PCRA court's order on any legal basis." (citation omitted)).

Based on the foregoing, we affirm the order of the PCRA court dismissing Appellant's ineffective assistance of counsel claims. The parties are instructed to attach a copy of the PCRA court's February 3, 2022 opinion to all future filings in this matter.

Order affirmed.

---

[5] We assume the PCRA court's reference to the "seminole case" of **Commonwealth v. Koch**, 39 A.3d 996 (Pa.Super. 2011), on page 21 of its opinion was a typographical error and not a suggestion that **Koch** was based upon tribal law.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/13/2023

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA   :    CRIMINAL TRIAL DIVISION

                       Vs.              :    2451 EDA 2021

    STEVEN SIMMINGER        :    CP-51-CR-0003208-2016

### OPINION

**FILED**

**FEB ± 3 2022**

Appeals/Post Trial
Office of Judicial Records

O'KEEFE, J.

Defendant, Steven Simminger, appeals this court's dismissal of his Post-Conviction Relief Act (hereinafter, for the sake of brevity referred to as PCRA) petition pursuant to 42 Pa.C.S. § 9541 *et seq.*

## PROCEDURAL HISTORY:

On March 13, 2016, the defendant was arrested and charged with murder and possessing an instrument of crime. Simminger was bound over for trial on all charges following a March 30, 2016, preliminary hearing. A motion to quash was heard and denied on June 2, 2016. Mr. Simminger's Suppression Hearing was heard and denied on August 31, 2017, with trial commencing November 22, 2017. A jury convicted Simminger of first-degree murder and possessing the instrument of a crime, and he was subsequently sentenced to life without the possibility of parole plus two and a half to five years' incarceration. The defendant timely filed a notice of appeal. The

1

Superior Court of Pennsylvania affirmed the judgement of sentence on August 21, 2019, with our Supreme Court denying allocatur on January 28, 2020.

A counseled PCRA petition was filed January 14, 2021, which was supplemented June 30th. The Commonwealth filed a motion to dismiss on July 9, 2021, to which the defendant responded on August 2nd. After an independent review of the record in its entirety, a notice pursuant to Pa.R.Crim.P. 907 was sent to the parties on October 15th. On November 1st, the defendant filed a response to the 907 notice and after another independent review the petition was dismissed on November 15th. Timely appeal was made, necessitating this opinion.

## STANDARD OF REVIEW:

When reviewing an order denying a PCRA petition, an appellate court looks to whether the PCRA court's decision is supported by the evidence of record and is free of legal error. *Commonwealth v. Spotz*, 624 Pa. 4, 84 A.3d 294 (2014). On questions of law, the standard of review is *de novo* and the scope of review is plenary. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa.Super.2014). The court will grant great deference to the factual findings of the PCRA court and will not disturb those facts unless they have no support in the record. *Id.*

## FACTS:

In the early morning hours of March 13, 2016, Sean Boyd, Colin McGovern, Casey Walsh and Gabby DiFrancesco were walking around Rittenhouse Square in center city Philadelphia, looking for a place to crash for the night. (N.T. 11-14-2017, pp. 75-77). Steven Simminger was roaming the same streets. When Simminger and the four's paths crossed, Boyd made a snide remark about the Jersey Devils' hat the defendant was wearing. (N.T. 11-14-2017, pp. 77-79; 11-16-2017, pp. 5-8). An argument ensued. An unarmed Boyd and McGovern approached the defendant.

2

Simminger took a knife out of his right coat pocket. As McGovern got closer, Simminger lunged, stabbing McGovern in the stomach. The defendant then lunged and slashed at Boyd but missed. McGovern then grabbed the defendant, and both landed on the ground, wrestling, with McGovern ending up on top. Again, Simminger stabbed the unarmed McGovern, this time in the heart. Boyd pulled McGovern away and the two got several steps away before McGovern collapsed from his wounds and soon died. The defendant fled, returning to get his hat and another object before again fleeing. (N.T. 11-14-2017, pp. 80-85; 11-15-2017, pp. 26-32; 11-16-2017, pp. 9-10). Simminger went home to New Jersey, returning to Philadelphia the next morning to the Veteran's Administration Hospital for treatment of a cut to his hand. (N.T. 11-14-2017, pp. 144-148). The police were eventually called, the defendant arrested, and found among his possessions were two knives. His clothes were soaked with Colin McGovern's blood, as was one of the two knives. (N.T. 11-14-2017, pp. 139-142). Simminger's cell phone displayed texts in which the defendant revealed that 'he likes stabbing', stating that stabbing "Is a rush," "Is satisfying" and "Is what mother-fuckers deserve when they bother me." (N.T. 11-15-2017, pp. 44-47).

## LEGAL DISCUSSION:

### *Denial of PCRA Petition*

The standard and scope of review for the denial of a PCRA petition is well-settled. The appellate court examines a PCRA appeal in the light most favorable to the prevailing party at the PCRA level. The court's review is limited to the findings of the PCRA court and the evidence of record. Additionally, the reviewing court grants great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. In this respect, the appellate court will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. However, where the petitioner raises questions of law, the stand-

ard of review is *de novo,* and the scope of review is plenary. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa.Super.2014), *appeal denied*, 101 A.3d 785 (Pa.2014) (citations and quotation marks omitted).

Appellant asserts that this court erred in summarily dismissing claims raised in his PCRA petition. (Statement of Matters Complained of on Appeal, p. 1). Pennsylvania Rule of Criminal Procedure 907 provides the standard for dismissing a PCRA petition without a hearing:

> "(1) the judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismissal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that proceedings continue."

There is no absolute right to a post-conviction petition hearing. It is clear, that a judge can dismiss an initial petition without a hearing if the court concludes that there are no genuine issues concerning any material fact, that the defendant is not entitled to post-conviction relief, and no purpose would be served by further proceedings. *Commonwealth v. Payne*, 794 A.2d 902, 906 (Pa.Super. 2002) (citing *Commonwealth v. Jordan*, 772 A.2d 1011, 1014 (Pa.Super. 2001)). The court may deny a defendant's request for an evidentiary hearing where the supporting factual allegations are "patently frivolous and is without a trace of support in either the record or from other evidence." *Id.* If "allegations of ineffectiveness of counsel are baseless or meritless then an evidentiary hearing is unnecessary and the unfounded allegations should be dismissed." *Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955, 957 (1984). Furthermore, it is almost axiomatic

4

that it is the defendant in a PCRA proceeding who bears the burden of proof and need meet that burden by a preponderance of the evidence. 42 Pa.C.S § 9543(a).

## *Ineffective Assistance of Counsel*

The law in Pennsylvania is straightforward that counsel is presumed effective and a defendant claiming ineffective assistance of counsel bears the burden of proving otherwise. *Commonwealth v. Fears*, 624 Pa. 446, 86 A.3d 795 (2014); *Commonwealth v. Cross*, 535 Pa. 38, 634 A.2d 173 (1993). To overcome this presumption, a defendant must meet a three-component standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): First, the underlying claim must have arguable merit. *Commonwealth v. Lauro*, 819 A.2d 100, 105-106 (Pa.Super.2003); *Commonwealth v. Rollins*, 558 Pa. 532, 542, 738 A.2d 435, 441 (1999); *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 356 (1995). Second, no reasonable basis must exist for counsel's actions or failure to act. In making this determination, the appellate court does not question whether there was a more logical course of action which counsel could have pursued, but rather did counsel's decision have any reasonable basis. *Commonwealth v. Rollins, supra,* 558 Pa. at 542, 738 A.2d at 441. Lastly, the defendant must establish that he suffered prejudice because of counsel's error, such that there is a reasonable probability that the outcome of the proceeding would have been different absent such an error. *Commonwealth v. Fears, supra,* 642 Pa. at 461, 86 A.3d at 804; *Commonwealth v. Lesko*, 609 Pa. 128, 15 A.3d 345, 373-74 (2011) (citing *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987)). It is not enough for the defendant to claim that counsel could have taken different steps, but rather, he must prove that counsel's strategy was "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Dunbar*, 503 Pa. 590, 470 A.2d 74, 77 (1983); *Commonwealth v. Albrecht*, 510 Pa. 603, 511 A.2d 764, 775 (1986). Counsel is presumed to have rendered effective assistance, and,

if a claim fails under any required element of the *Strickland* test, the court may dismiss the claim on that basis. *Commonwealth v. Vandivner*, 634 Pa. 482, 490, 130 A.3d 676, 680 (2015). To obtain relief based upon a claim of ineffective assistance of counsel, a petitioner must establish by a preponderance of evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii).

### *Failure to Present Testimony from Forensic Psychiatrist*

Simminger's first allegation of ineffective assistance is trial counsel's failure to present a forensic psychiatrist to establish that the defendant lacked the specific intent to kill necessary for a first degree murder at the time of the stabbing and therefore failing to present a "mental health defense." (Statement of Errors Complained of on Appeal, p. 1). It should be noted, first and foremost, that trial counsel hired, and presented the testimony of Dr. Frank M. Dattilio, Ph.D., a clinical and forensic psychologist, as well as Cyril Wecht, M.D. a forensic medical examiner. Simminger contends that only a forensic psychiatrist, not psychologist, would be the proper expert and that counsel's conduct was so far below the standard of criminal defense that no competent lawyer would hire a psychologist rather than his newfound psychiatrist, Dr. Stephen Mechanick, M.D.

Dr. Mechanick reports that he reviewed Simminger's United States Naval records, VA records, the two reports of the aforementioned psychologist as well as that expert's notes, the report of the psychiatrist hired by the prosecution, a portion of the defendant's trial transcripts which consisted only of the sections containing the testimony of Dr. O'Brien, the Commonwealth psychiatrist, and of Dr. Dattilio on November 17th and 20th of 2017 (although trial testimony began on November 14th and was presented the 15th, 16th, 17th, 20th, and 21st), the Superior Court opinion on direct appeal, and the report of Cyril Wecht, M.D., the medical examiner hired by the defense prior

to trial. The psychiatrist does not claim to have reviewed the videotape surveillance from the Rittenhouse Hotel showing the stabbing (Discs 1 and 2), the videotape from the Metro Bakery or the videotape of Mr. Simminger in the police interview room (although these were reviewed by the psychologist who testified at trial). Dr. Mechanick's report alleges numerous claims of deficiencies in the evaluation and testimony by the defense expert, Dr. Dattilio, resulting in an inadequate defense at trial. Dr. Mechanick's claims are addressed in detail below.

*Expert's Failure to Test*

Dr. Mechanick contends that:

> "The defense's psychology expert, Dr. Dattilio, noted that Mr. Simminger "appeared to have some cognitive deficits" and that neuropsychological testing would be needed to evaluate this. Given Mr. Simminger's history of a very serious head injury and traumatic brain syndrome, this should have been pursued. However, the records I reviewed indicated that Mr. Simminger never had neuropsychological testing. *Such testing, if it showed* cognitive impairment, would have been essential to evaluate the role that the brain injury played in Mr. Simminger's behavior at the time of the offense. Accordingly, it is my opinion that Dr. Dattilio's evaluation was deficient in not pursuing this, and this contributed to Mr. Simminger's inadequate defense." [Emphasis added] (Stephen Mechanick Report 12-29-2020, p. 11).

The psychiatrist is proposing that the psychologist was substandard for not performing certain neuropsychological testing, that those tests *might* have shown cognitive impairment. However, it is pure and utter, unsupported guesswork. This psychiatrist failed to perform the very tests that he complains the psychologist did not perform. He can't say Simminger has cognitive impairment, but he guesses that if the tests showed cognitive impairment, then a different defense than the one chosen would have been appropriate. Clearly this claim is completely devoid of merit.

In discussing these allegations further, it is imperative to note, that the defense presented in this case was one of imperfect self-defense, which if accepted by the jury would result in a voluntary manslaughter conviction rather than a first- or third-degree murder finding. The PCRA

7

psychiatrist contends that the proper defense was one of diminished capacity, which would have reduced a first-degree case to one of third-degree murder. He does this despite never having viewed the videos of the stabbing, the interview the following morning while in police custody, nor having reviewed the testimony of the witnesses to the incident, as well as a whole host of other individuals testifying at trial.

The law is clear that an ineffective assistance of counsel claim cannot "generally succeed through comparing, by hindsight, the trial strategy employed with alternatives not pursued. A finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Howard*, 553 Pa. 266, 274, 719 A.2d 233, 237 (1998) (internal citations omitted). Here, counsel's trial strategy was completely reasonable, and defendant's claim that an alternative strategy would have been successful is unwarranted, even if it were not solely based on conjecture about what tests that still have never been performed could have possibly revealed or by the presentation of a witness who has failed to review all available evidence.

*Expert's Failure to diagnose Possible Frontal Lobe Damage*

Dr. Mechanick further impugns the psychologist:

> "Mr. Simminger was the victim of a serious car accident in 1994 that resulted in a concussion, traumatic brain injury, and partial amputation of his left leg. It is my opinion that Mr. Simminger's brain injury from that accident, as well as two other concussions he experienced, *may have caused frontal lobe damage* that further impaired his ability to process information, his judgment, and his impulse control." [Emphasis added]. (Stephen Mechanick Report 12-29-2020, p. 10)

Again, the psychiatrist is guessing. The doctor cites no tests since 1994 that had been performed to assess frontal lobe damage, nor any tests he performed to properly make this assess-

8

ment, and to claim Dr. Dattilio was incompetent for not making such an untested claim is untenable. To say the defendant *may have frontal lobe damage*, with no substantiation, no proper evaluation or testing is completely devoid of credit. This new expert's claim that the prior expert was inadequate because the defendant *may have frontal lobe damage* is sheer speculation and cannot be the basis of a finding of ineptness.

## *Expert's Failure to Alter Conclusions*

Further along in Dr. Mechanick's conclusions he reports:

> "It is my opinion that Dr. Dattilio failed to adequately address the issue of how Mr. Simminger's psychiatric illness and substance intoxication impaired his ability to form specific intent. It is my opinion that Dr.Dattilio should have discussed this issue with Mr. Simminger's attorney had [sic] helped the attorney to develop an appropriate defense.
>
> It is my opinion that, although Dr. Dattilio opined that Mr. Simminger had a number of psychiatric diagnoses, and that he was paranoid and impaired at the time of the offense, he failed to consider and develop an appropriate psychiatric/psychological opinion that would have been helpful to Mr. Simminger's defense." (Stephen Mechanick Report 12-29-2020, p. 12)

It appears this psychiatrist is mandating that mental health expert witnesses are to tailor their analysis and conclusions to fit into the defense which presents the best chances of winning, rather than basing one's conclusions on the evaluations made of the defendant. "Expert testimony is generally admissible to aid the jury when the subject matter is distinctly related to a science, skill or occupation which is beyond the knowledge or experience of an average lay person." *Commonwealth v. Minerd,* 562 Pa. 46, 55, 753 A.2d 225, 230 (2000) (internal citations omitted). Such an expert may testify in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. *See Grady v. Frito-Lay, Inc.,* 576 Pa. 546, 839 A.2d 1038, 1045 (2003). Expert testimony cannot be used to

9

bolster the credibility of witnesses. *Commonwealth v. Minerd, supra; Commonwealth v. Johnson*, 456 Pa.Super. 251, 254, 690 A.2d 274, 276 (1997). This psychiatrist's opinion of what would be a successful defense, as well as his unsubstantiated claim to know the interaction between the trial attorney and psychologist is not within the purview of his expertise, and frankly somewhat offensive. His claim that it is incumbent upon the expert witness to develop an opinion based on what he believes will win the case, rather than a scientific review of the evidence and evaluations is, to say the least, not an acceptable criticism of the trial expert in this matter, and as such defendant's claim of trial counsel's ineffectiveness in not procuring such an expert is inappropriate.

*Defendant's perception of Risk after Altercation*

Another conclusion by the PCRA psychiatrist:

> "It is my opinion that Mr. Simminger had an impaired perception of risk after the altercation, as he thought other people (the man's friends) would come after him. Based on my review of the available records and Mr. Simminger's statements to me, he did not realize the other man had died until after he went to the VA." (Stephen Mechanick Report 12-29-2020, p. 11)

The psychiatrist neglects to advise how the defendant's perception that other people would come after him was indicative of a mental illness that the trial expert misdiagnosed. When the fight occurred, Simminger was fighting against two males, with two female companions nearby. When Simminger ran away, the decedent was walking towards his companions. (N.T. 11-14-2017, pp. 84-85). Indeed, Simminger told this psychiatrist that "the two men walked back to the two women." (Stephen Mechanick Report 12-29-2020, p. 3). Mr. Colin McGovern collapsed shortly thereafter, but there was no testimony indicating that the defendant knew McGovern was dead at that point. Nor, since the decedent was in the company of three other individuals, does the psychiatrist explain how Simminger's fear that others would come after him was an impaired per-

10

ception of risk. Again, this conclusion is without basis, is factually incorrect and clearly not a reason to declare the trial expert incompetent.

*Failure of Counsel to Meet with Expert*

Counsel and the PCRA expert contend throughout their writings that counsel failed to meet often enough with her experts resulting in a deprivation of justice for this defendant. For example, "Dr. Dattilio should have discussed the issue…with trial counsel" (Memorandum of Law in Support of Petition for Post-Conviction Relief p. 21); "…again due to trial counsel's lack of involvement with her expert…" (Memorandum of Law in Support of Petition for Post-Conviction Relief p. 22); and "It is my opinion that Dr. Dattilio should have discussed this issue with Mr. Simminger's attorney…and discuss the available defenses with Mr. Simminger's attorney" (Stephen Mechanick Report 12-29-2020, p. 12). Again, there is nothing to substantiate this claim. Nothing has been presented as to how often counsel met with, telephoned, or had any other type of communication with the experts nor the extent of their communications. The lack of even a scintilla of evidence is fatal to this claim.

*Presenting the Wrong Defense*

The crux of the psychiatrist's complaints is that trial counsel and the expert psychologist presented the wrong defense. The new psychiatrist contends the proper defense was diminished capacity, not imperfect self-defense. The PCRA expert contends that Simminger's psychiatric illness and substance intoxication impaired his ability to form specific intent to kill and that that was the only proper mental health explanation that should have been used, even though the psychiatrist had not viewed any of the surveillance videos of the killing nor the video of the defendant when in police custody. Likewise he had not reviewed any of the fact witness' testimony. Mechanick further complains that the psychologist's conclusions were insufficient in that he used

11

terms such as "mental condition at the time of the instant offense *contributed* to his belief that he was in immediate danger" and "that his actions in his mind were justified as a *measure* of self-defense." (Stephen Mechanick Report 12-29-2020, p. 12). Such criticism is petty and trifling. Dr. Dattilio was clear in his report and testimony that the defendant incorrectly believed he was in danger of death and responded to protect himself. Moreover, the new expert's report confirms the imperfect self-defense argument in that Simminger told the psychiatrist "He stated that [he] took the knife that he was carrying with him out of his pocket because he felt scared...Mr. Simminger stated that he stabbed the man to protect himself." (Stephen Mechanick Report 12-29-2020, p. 3). The new expert merely contends that he would have done things differently – essentially admitting to third degree murder rather than present an imperfect self-defense argument – but in no way does either the defendant or his new expert come close to showing that counsel had no reasonable basis for presenting an imperfect self-defense justification to the jury. As previously noted, a proposed alternate trial strategy based on conjecture cannot substantiate a claim for ineffective assistance of counsel. As such, this claim is without merit.

### *Failing to Present Family Members*

Next, defendant claims that "trial counsel was ineffective for failing to properly investigate and present fact witnesses regarding Petitioner's historical mental health issues with family and friends." (Statement of Errors Complained of on Appeal, p. 1). Defendant argues that his family members should have been presented to the jury to humanize him and further support his mental health issues, including the defendant's imaginary friend "Harry". However, this information was presented to the jury through the extensive testimony of Dr. Dattilio, who reported that he had interviewed all three family members in preparing his report, as well as the texts with his sister prior to the killing concerning "Harry". "Trial counsel will not be deemed ineffective for failing

12

to assert a claim that would not have been beneficial, or for failing to interview or present witnesses whose testimony would not have been helpful." *Commonwealth v. Howard*, 553 Pa. 266, 274, 719 A.2d 233, 237 (1988). "To demonstrate *Strickland* prejudice, a petitioner 'must show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case.'" *Commonwealth v. Sneed*, 616 Pa. 1, 45 A.3d 1096, 1109 (2012) (quoting *Commonwealth v. Gibson*, 597 Pa. 402, 951 A.2d 1110, 1134 (2008)). Further, "counsel cannot be deemed ineffective for failing to pursue cumulative evidence." *Commonwealth v. Hall*, 549 Pa. 269, 300, 701 A.2d 190, 206 (1997) (citing *Commonwealth v. Cross*, 535 Pa. 38, 46, 634 A.2d 173, 177 (1993)).

As Dr. Dattilio testified at length about the defendant's mental health issues, incorporating information he had received from the defendant's family, counsel was in no way required to call witnesses to present cumulative evidence of the defendant's mental health history. The defendant's claim that this would have negated the specific intent to kill required for first degree murder is without support and accordingly fails.

### *Allegation of Ineffectiveness in Closing Argument and Conceding Defendant was Competent*

Next Simminger contends counsel was ineffective in her closing argument, conceding the defendant's competency and that he did not have psychosis. (Statement of Errors Complained of on Appeal, p. 1). An individual is competent to stand trial when they have sufficient ability to consult with counsel with a reasonable degree of rational understanding and to have a rational and factual understanding of the proceedings. *Commonwealth v. Watkins*, 630 Pa. 652, 108 A.3d 692 (2014); *Commonwealth v. Pruitt*, 597 Pa. 307, 951 A.2d 307 (2008). Mr. Simminger was not found to be incompetent. The PCRA Psychiatrist did not claim that the defendant was not competent. Counsel cannot be found wanting for stating the defendant was competent when he was in fact competent.

13

As for the specific complaints about counsel's closing argument, the portion of the closing to which the defendant now protests was as follows:

> "Maybe me, maybe one of you who doesn't suffer from any kind of mental disorder; maybe if that happened to us, we wouldn't have thought we were going to be killed or jumped or beaten. However, you have to take the state of mind of Mr. Simminger.
>
> Murder of the first degree requires specific intent to kill. Okay. The district attorney has talked about intentional acts. He intentionally walked here. He intentionally did this. He intentionally crossed the street. He said it at least 20 times. And I submit to you, yes, he intentionally stabbed him. *That's not the question whether nor not the stabbing was intentional. The question is whether the intent to kill. The mental intent.* That is what is a question in this case. Did he possess the specific intent to kill during the time of this incident given his mental state?...
>
> I submit to you *we have never said that Mr. Simminger has psychosis. We have never said that he doesn't understand what's going on. He is competent. He understands he's competent to stand trial. That is not the defense in this case.*
>
> The defense in this case is because of his mental state, that he believed that he was in immediate danger of being killed... (N.T. 11-21-2017, pp. 56-57).
>
> Dr. Dattilio states that he was diagnosed at one point with PTSD, with schizophrenia, with the mood disorder. Dr. O'Brien actually took that stand and said, Well, since he has so many diagnoses and they couldn't pinpoint which one down it was, it's just the drugs or alcohol. You have someone who is being prescribed an antipsychotic medication. (N.T. 11-21-2017, pp. 57-58).

The defendant is being extremely selective in what they are presenting and taking a few statements completely out of context. The closing argument needs to be reviewed as a whole. The courts are highly deferential to a defense attorney's closing summation:

> "The right to effective assistance extends to closing arguments. Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should 'sharpen and clarify the issues for resolution by the trier of fact,' but which issues to sharpen and how best to clarify

14

them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. Judicial review of a defense attorney's summation is therefore highly deferential." *Yarborough v. Gentry*, 540 U.S. 1, 5-6, 124 S.Ct.1, 4, 157 L.Ed.2d 1 (2003) (internal citations omitted).

Counsel discussed the standards applicable in a criminal trial, the jurors' duty to weigh the evidence fairly and impartially, the evidence presented and the logical and relevant inferences therefrom, the holes in the government's theory as well as the evidence that the prosecutor did not present to the jury when they had the chance, the police and their actions and conclusions, the videos presented as well as the physical evidence and the experts presented, the reason to believe the defense experts as well as the reasons to disbelieve the prosecution expert, and did so in a way that exhorted the defense theory of an imperfect self-defense excellently. There was nothing deficient in counsel's performance. Her summation was a reasonable approach to the evidence presented, as well as in accordance with the theory presented.

Indeed, counsel's concession of the defendant's actions resulting in the death of the decedent to have the jury find the lesser charge of voluntary manslaughter rather than first degree murder was realistic, especially considering the overwhelming evidence presented, including videos of the stabbings. Counsel vigorously cross-examined the prosecution's witnesses, presented a profusion of evidence on the defendant's behalf, made appropriate objections, and advocated vociferously for her client. Our law is clear, an attorney may, when facing overwhelming evidence of guilt, strategically decide to admit a certain amount of culpability in order to preserve credibility with the factfinder so that their argument for a lesser degree of guilt will have a higher chance of succeeding. *Commonwealth v. Cousin*, 585 Pa. 287, 301-03, 888 A.2d 710, 719-20 (2005), *abrogated on different grounds*, *Commonwealth v. Roebuck*, 32 A.3d 613 (Pa.2011); *Commonwealth v. Bryant*, 579 Pa. 119, 855 A.2d 726 (2004); *Commonwealth v. DeHart*, 539 Pa. 5, 18, 650 A.2d

15

38, 44 (1994), *abrogated on different grounds, Commonwealth v. Keaton*, 45 A.3d 1050 (Pa.2012); *Commonwealth v. Johnson*, 572 Pa. 283, 307, 815 A.2d 563, 577 (2002); *Commonwealth v. Lofton*, 448 Pa. 184, 189, 292 A.2d 327, 330 (1972). Considering the deference afforded a closing summation, and counsel clearly had a reasonable basis for this strategy, this claim is without merit.

### *Coercing Defendant to Waive Defense of Voluntary Intoxication*

Appellant further contends that trial counsel's request to waive the defense of voluntary intoxication was improper and that counsel coerced the defendant into agreeing without a knowing waiver. (Statement of Errors Complained of on Appeal, p.1; Memorandum of Law in Support of Petition for Post-Conviction Relief p. 27). First, it needs to be pointed out that PCRA counsel offers not an iota of evidence that the defendant was coerced.

At the charging conference, counsel requested that, for strategic reasons, she did not want the voluntary intoxication instruction read to the jury. When this occurred, the defendant was then colloqued as follows:

> "THE COURT: Counsel also talked to you about voluntary intoxication. Under the law voluntary intoxication is usually not an offense but it can reduce first degree to third degree in certain circumstances.
>
> Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you gone over that with your attorney?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You're entitled for me to charge the jury with the voluntary intoxication charge to the jury which would allow them to reduce any charge from first degree to third degree.
>
> Do you understand that?
>
> THE DEFENDANT: Yes.

16

THE COURT: And your attorney has said that she talked to you about it and she doesn't wish to present that as a matter of strategy.

Have you talked with her about that strategy?

THE DEFENDANT: Yes.

THE COURT: Do you agree with her about that strategy?

THE DEFENDANT: Yes.

THE COURT: So it's your position you do not want the voluntary intoxication charge read to the jury; is that correct?

THE DEFENDANT: Yes. (N.T. 11-21-2017, pp. 42-43).

For the defendant to succeed in his claim, he would need to assert that he was lying under oath when he swore that he had discussed the strategy with his attorney and agreed with that strategy, and the record clearly shows that he agreed. He is barred from doing so. *See Commonwealth v. Michaud*, 70 A.3d 862, 874 (Pa.Super.2013); *Commonwealth v. Pollard*, 832 A.2d 517, 524 (Pa.Super.2003); *Commonwealth v. Cappelli*, 340 Pa.Super. 9, 489 A.2d 813, 819 (1985); *Commonwealth v. Willis*, 68 A.3d 997, 1009 (Pa.Super.2013).

Appellant further claims that trial counsel's action removed from the juries' [sic] consideration a verdict less than first degree murder. (Memorandum of Law in Support of Petition for Post-Conviction Relief p. 28). That statement is completely incorrect. Trial counsel asked for, and the jury was subsequently charged with the voluntary manslaughter instruction. It was the defense's entire theory that if the defendant should be convicted of anything, it should be voluntary manslaughter.

### *Failure to Object to Jury Instruction*

Next, defendant asserts that "counsel was ineffective for failing to object to specific jury instructions that were clearly not supported by the evidence as there was no testimony from a psychological position for an insanity defense." (Statement of Errors Complained of on Appeal,

17

p. 2). Prior to trial, defense counsel filed two notices of insanity or mental infirmity defense. The prosecution filed a motion to preclude any such defense, which was denied. The PCRA petition alleges that defense counsel was ineffective in failing to object to the charge. When reviewing a challenge to a portion of the jury charge, the appellate court must review the jury charge as a whole to determine if it is fair and complete. A trial court has wide discretion in how it phrases its instructions, as long as it clearly, adequately and accurately presents the law to the jury. The court commits an abuse of discretion only when there is an inaccurate statement of the law. *Commonwealth v. Conaway*, 105 A.3d 755, 760-61 (Pa.Super.2014); *Commonwealth v. Roser*, 914 A.2d 447, 455 (Pa.Super.2006). The standard of review of a challenged jury instruction is well-settled:

> When reviewing jury instructions for reversible error, an appellate court must read and consider the charges as a whole. We will uphold an instruction if it adequately and accurately reflects the law and is sufficient to guide the jury through its deliberations. Error will not be predicated on isolated excerpts. Instead, it is the general effect of the charge that controls. An erroneous charge warrants the grant of a new trial unless the reviewing court is convinced beyond a reasonable doubt that the error is harmless.

*Commonwealth v. Ketterer*, 725 A.2d 801, 804-805 (Pa.Super.1999) (citing *Commonwealth v. Nichols*, 692 A.2d 181, 186 (Pa.Super.1997)).

A trial court is bound to charge a jury on the correct legal principles applicable to the facts presented at trial. *Commonwealth v. Cox*, 546 Pa. 515, 686 A.2d 1279 (1996). The trial court has broad discretion in how it phrases its instructions to a jury, so long as the law is clearly, adequately and accurately presented to the jury for its consideration. *Commonwealth v. Gibson*, 553 Pa. 648, 665, 720 A.2d 473, 481 (1998) (citing *Commonwealth v. Hawkins*, 549 Pa. 352, 701 A.2d 492 (1997), *cert. denied*, 523 U.S. 1083, 118 S.Ct. 1535, 140 L.Ed.2d 685 (1998)).

18

Prior to charging the jury, counsel discussed some of the proposed instructions including the mental infirmity instruction. (N.T. 11-21-2017, pp. 36-40). This court read the Pennsylvania Suggested Standard Criminal Jury Instructions during its charge. The appellant now denounces the charge and counsel's failure to object to it, in that "Petitioner's mental health defense was not fully developed and supported by the evidence." (Memorandum of Law in Support of Petition for Post-Conviction Relief p. 33). No further specificity is provided, so it is assumed that PCRA counsel is again citing their new expert who would have done things differently. The evidence clearly was sufficient to warrant the instruction and as such counsel cannot be faulted for failing to object to a proper instruction. *See Commonwealth v. Gass*, 514 Pa. 287, 523 A.2d 741, 742-43 (1987). Accordingly, this claim is without merit.

## *Counsel Effectively Waived Self-Defense*

The defendant next protests that "counsel was ineffective for abandoning appellant's defense of self-defense, which a defense expert witness had presented, by conceding in her closing argument that he was guilty of voluntary manslaughter." (Statement of Errors Complained of on Appeal, p. 2). Defendant has further argued that counsel did this "without first discussing that strategy with Petitioner and without his assent or approval." (Memorandum of Law in Support of Petition for Post-Conviction Relief, p. 35). Once again, there is not a scintilla of evidence proffered that the defendant did not agree with the chosen strategy. The PCRA petition is not signed by the defendant but by counsel. No affidavit from the defendant has been attached verifying the contention. As such, this complaint, as several others in this petition, is unsubstantiated.

The defendant attempts to rely upon *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) for the proposition that counsel cannot argue that their client is guilty of a lesser offense because that amounts to a guilty plea of the lesser offense without the defendant's

specific agreement. As noted in the preceding paragraph, no evidence has been offered to show the defendant did not agree. Moreover, the defense is ignoring our Supreme Court's precedent of *Commonwealth v. Cousin*, 585 Pa. 287, 888 A.2d 710 (2005), *abrogated on different grounds*, *Commonwealth v. Roebuck*, 32 A.3d 613 (Pa.2011), which specifically addressed *Cronic* and determined that it is only applicable when counsel's failure has been complete so as to thoroughly remove any pretension that the accused had counsel's reasonable assistance. *Id.*, 585 Pa. at 301, 888 A.2d at 718-19. *See also Commonwealth v. Steele*, 599 Pa. 341, 384-85, 961 A.2d 786, 811-12 (2008), *abrogated on different grounds*, *Pena-Rodriguez v. Colorado*, 137 S.Ct. 855, 197 L.Ed.2d 107 (2017). The presumption of prejudice is not triggered when trial counsel concedes guilt of a lesser crime in their closing argument. *Commonwealth v. Cousin, supra,* 585 Pa. at 303, 888 A.2d at 720.

Indeed, as previously stated, counsel's concession of the defendant's actions resulting in the death of the decedent in an attempt to have the jury find the lesser charge of voluntary manslaughter rather than a full self-defense was realistic, especially in light of the overwhelming evidence presented, including videos of the stabbings. Counsel vigorously cross-examined the prosecution's witnesses, presented a profusion of evidence on the defendant's behalf, made appropriate objections, and advocated vociferously for her client. The killing was on video, and counsel pursued a reasonable strategy designed to best advocate for her client's interests. Our law is clear, an attorney may, when facing overwhelming evidence of guilt, strategically decide to admit a certain amount of culpability to preserve credibility with the factfinder so that their argument for a lesser degree of guilt will have a higher chance of succeeding. *Commonwealth v. Cousin*, 585 Pa. 287, 301-03, 888 A.2d 710, 719-20 (2005), *abrogated on different grounds, Commonwealth v. Roebuck*, 32 A.3d 613 (Pa.2011); *Commonwealth v. Bryant,* 579 Pa. 119, 855 A.2d 726 (2004); *Common-*

wealth v. DeHart, 539 Pa. 5, 18, 650 A.2d 38, 44 (1994), *abrogated on different grounds, Commonwealth v. Keaton*, 45 A.3d 1050 (Pa.2012); *Commonwealth v. Johnson*, 572 Pa. 283, 307, 815 A.2d 563, 577 (2002); *Commonwealth v. Lofton*, 448 Pa. 184, 189, 292 A.2d 327, 330 (1972). Furthermore, in *Florida v. Nixon*, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), the United States Supreme Court has found that counsel "was not additionally required to gain express consent before conceding Nixon's guilt" and the decision to concede guilt in that case was not unreasonable under the circumstances. *Id.* at 189. This allegation, without addressing *Commonwealth v. Cousin, supra.* and its progeny is spurious.

### *Failing to Object to Defendant's Text Messages*

Finally, Simminger complains that counsel was ineffective in failing to object to the admission of defendant's text messages because they were not properly authenticated and were hearsay. (Statement of Errors Complained of on Appeal, p. 2). These claims fail as well.

It should be noted that counsel filed and litigated a suppression motion contending the extraction of the defendant's cell phone was the result of an overly broad search warrant. Counsel further argued that the contents of the extraction should be suppressed, claiming the two detectives searched the phone prior to the issuance of the search warrant. After a full hearing, the motion was denied. Appellant claims that was not enough.

The seminole case concerning the authentication of text messages was *Commonwealth v. Koch*, 39 A.3d 996 (Pa.Super.2011) wherein the court decided:

> "Pennsylvania Rule of Evidence 901 provides that authentication is required prior to admission of evidence. The proponent of the evidence must introduce sufficient evidence that the matter is what it purports to be. Pa.R.E. 901(a). Testimony of a witness with personal knowledge that a matter is what it is claimed to be can be sufficient. Pa.R.E. 901(b)(1). *See also* Comment, citing *Common-*

21

*wealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980). Furthermore, electronic writings typically show their source, so they can be authenticated by contents in the same way that a communication by postal mail can be authenticated. Circumstantial evidence may suffice where the circumstances support a finding that the writing is genuine. *In the Interest of F.P.*, a Minor, 878 A.2d 91 (Pa.Super.2005)....

Importantly, in *In The Interest of F.P., a Minor, supra*, we rejected the argument that e-mails or text messages are inherently unreliable due to their relative anonymity and the difficulty in connecting them to their author. *Id* at 95. We reasoned that the same uncertainties existed with written documents: "A signature can be forged; a letter can be typed on another's typewriter; distinct letter-head stationery can be copied or stolen." *Id.* Concluding that electronic communications, such as e-mail and instant messages, can be authenticated within the framework of Pa.R.E. 901 and our case law, we declined to create new rules governing the admissibility of such evidence. We held that such evidence is to be evaluated on a case-by-case basis as any other document to determine whether there has been an adequate foundational showing of its relevance and authenticity....

[...E]-mails and text messages are documents and subject to the same requirements for authenticity as non-electronic documents generally. A document may be authenticated by direct proof, such as the testimony of a witness who saw the author sign the document, acknowledgment of execution by the signer, admission of authenticity by an adverse party, or proof that the document or its signature is in the purported author's handwriting. *See McCormick on Evidence*, §§219-221 (E. Cleary 2d Ed. 1972). A document also may be authenticated by circumstantial evidence, a practice which is "uniformly recognized as permissible." *Commonwealth v. Brooks*, 352 Pa.Super. 394, 508 A.2d 316 (1986) (citing *e.g. Commonwealth v. Nolly*, 290 Pa. 271, 138 A. 836 (1927) (letters authenticated by contents: facts known only to sender and recipient); *Commonwealth v. Bassi*, 284 Pa. 81, 130 A. 311 (1925) (unsigned letter authenticated by defendant's nickname written on it, along with contents indicating knowledge of matters familiar to both defendant-sender and witness-recipient); and *McFarland v. McFarland*, 176 Pa.Super. 342, 107 A.2d 615, 616 (1954)).

As these cases illustrate, the difficulty that frequently arises in e-mail and text message cases is establishing authorship. Often more than one person uses an e-mail address and accounts can be accessed without permission. In the majority of courts to have considered the question, the mere fact that an e-mail bears a particular

e-mail address is inadequate to authenticate the identity of the author, typically, courts demand additional evidence.

Text messages are somewhat different in that they are intrinsic to the cell phones in which they are stored. While e-mails and instant messages can be sent and received from any computer or smart phone, text messages are sent from the cellular phone bearing the telephone number identified in the text message and received on a phone associated with the number to which they are transmitted. The identifying information is contained in the text message on the cellular telephone. However, as with e-mail accounts, cellular telephones are not always exclusively used by the person to whom the phone number is assigned." *Commonwealth v. Koch*, 39 A.3d 996, 1002-1005 (Pa.Super.2011).

As noted in *Koch, supra*, authentication of text messages requires more than mere confirmation that the telephone number or address belong to a particular person. However, circumstantial evidence may be used for authentication. Detective Graf testified that he took possession of the phone on the day that the defendant was arrested on March 13, 2016, within hours of the murder. (N.T. 8-31-2017, pp. 36-37, 41; 11-14-2017, pp.133-139). Detective Lucke testified that he did the extraction on the passcode protected phone. (N.T. 8-31-2017, pp. 48-50).

Circumstantial evidence abounds that the cell phone was the defendant's as well that he sent the texts. A few hours after the killing, the phone was taken from the defendant's possession; the text exchanges included rampant circumstantial evidence with which to confirm the defendant as the author, and receiver, of the abounding text messages. Clearly, the vast majority of the messages were with "Stephanie", Simminger's sister's name. Numerous texts referred to mom and/or dad, again confirming appellant was texting his sister Stephanie. Some even referred to Simminger's imaginary friend, "Harry".

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Pa.R.E.801(c); *Commonwealth v. Ramtahal,* 613 Pa. 316, 329, 33 A.3d 602, 610 (2011). Hearsay statements are

23

generally inadmissible unless they fall under an enumerated exception. Pa.R.E. 802. "An out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement." *Commonwealth v. Busanet*, 618 Pa. 1, 56, 54 A.2d 35, 68 (2012). Rule 803 of the Pennsylvania Rules of Evidence provides certain exceptions to the hearsay rule, and in pertinent part states:

> **"Rule 803. Exceptions to the Rule Against Hearsay – Regardless of Whether the Declarant Is Available as a Witness**
> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
> (1) **Present Sense Impression.** A statement describing or explaining an event or condition, made while or immediately after the declarant perceived it...
> (2) **Excited Utterance.** A statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused...
> (3) **Then-Existing Mental, Emotional, or Physical Condition.** A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will."

The texts used were not inadmissible hearsay but clearly state of mind exceptions to that rule. Two days before the killing, the defendant texted his sister that he was getting his knives back the next day, telling her that the knives "make me feel better," and "Fighting is so barbarian" (N.T. 11-15-2017, pp. 42-44). He also texted her that stabbing "is a rush" and that it is "satisfying". (N.T. 11-15-2017, p. 45). Simminger told her it is "what mother-fuckers deserve if they bother me... Especially the black ones... Usually who it is." (N.T. 11-15-2017, p. 45). When his sister asked him if he wanted to stab someone, he responded "Been there. Done that...More than once...I like the knife...Feel better with one in my pocket." (N.T. 11-15-2017, p. 46). Also, "Somebody is out to get me. And when they try, they are going to be sorry." (N.T. 11-15-2017, p. 47). An hour before the killing, he texted, "Somebody downtown is about to get taken, baby" (N.T. 11-15-

24

2017, p. 55). Simminger's final texts prior to the stabbing were "I'm on a mission" and "I need money." (N.T. 11-15-2017, p. 57).

Furthermore, the statements were not admitted for the truth of the matter asserted. If a statement is not introduced for the truth of the matter asserted, it does not fall within the ban of hearsay. *Commonwealth v. Busanet, supra.* The statement was introduced to show the decedent's then-existing state of mind – that he was upset and angry, clearly an exception to the hearsay rule. It is important to note that a review of the cross-examination by defense counsel ably used them for the purpose of showing the defendant's infirm mental state. Accordingly, counsel cannot be faulted for failing to object.

As such, the appellant's PCRA petition was properly denied without a hearing

BY THE COURT:

J. SCOTT O'KEEFE, J.

DATE: February 3, 2022

25

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CRIMINAL TRIAL DIVISION |
| | : | |
| Vs. | : | 2451 EDA 2021 |
| | : | |
| STEVEN SIMMINGER | : | CP-51-CR-0003208-2016 |

## Proof of Service

I hereby certify that I am on this day serving the foregoing Court's Opinion upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

Defense Attorney:
Thomas A. Bergstrom, Esquire
Buchanan, Ingersoll & Rooney, P.C.
Two Liberty Place
50 South 16th Street, Suite 3200
Philadelphia, PA 19103

Type of Service: ( ) Personal (**X**) First Class Mail ( ) Interoffice ( ) Other, please specify

Defense Attorney:
Ashley Shapiro, Esquire
Armstrong Teasdale LLP
2005 Market Street, 29th Floor
Philadelphia, PA 19103

Type of Service: ( ) Personal (**X**) First Class Mail ( ) Interoffice ( ) Other, please specify

District Attorney:
Lawrence Jonathan Goode, Esquire
Chief – Appeals Division
District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107-3499

Type of Service: ( ) Personal ( ) First Class Mail (**X**) Interoffice ( ) Other, please specify

Date: February 3, 2022

Allison M. O'Keefe, Law Clerk